CRAWFORD MUSIC CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85389, 88290. Promulgated July 27, 1939.

*Harry J. Stein, Esq.*, for the petitioner.
*Benjamin M. Brodsky, Esq.*, for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income and excess profits taxes as follows:

| Docket No. | Period | Income tax | Excess-profits tax | 25 percent delinquency penalty |
|---|---|---|---|---|
| 85389 | Fiscal year ended Aug. 31, 1933 | $601.48 | | $150.37 |
| 85389 | do | | $47.21 | 11.80 |
| 85389 | Fiscal period Sept. 1 to Dec. 31, 1933 | 670.05 | 192.06 | |
| 88290 | 1934 | 2,652.64 | | |

The income tax deficiency determined for the fiscal year ended August 31, 1933, is shown by the deficiency notice as $400.99 and penalty for delinquency $100.25. This amount is eight-twelfths of the true deficiency and penalty as shown in another part of the deficiency notice. An error in the determination of the deficiency and delinquency penalty is apparent on the face of the notice. At the hearing counsel for the respondent moved to correct the deficiency notice, which motion was granted, to show a deficiency in income tax of $601.48 and a delinquency penalty of $150.37.

As stated by the petitioner in its brief, the questions in issue in Docket No. 85389 are (1) whether the respondent erred in disallowing the deduction of $5,194.90 for advance royalties written off for the period September 1, to December 31, 1933,[1] and (2) whether the pe-

---

[1] This issue was waived by the petitioner at the conclusion of its brief.

titioner is entitled to credit against taxes due the United States the amounts of $3,199.87 and $926.80 paid to the Government of Great Britain for the year ended August 31, 1933, and the period September 1 to December 31, 1933, respectively. In Docket No. 88290 the question is "Whether the petitioner is entitled to the sum of $2,611.10 as credits against tax, for taxes paid to the Governments of Great Britain and the Dominion of Canada, for the year ended December 31st, 1934."

DeSylva, Brown & Henderson, Inc., is a New York corporation, incorporated in September 1926. The Crawford Music Corporation is a New York corporation, which was incorporated in November 1928.

On September 3, 1934, DeSylva, Brown & Henderson, Inc., lawfully owned all of the capital stock of the Crawford Music Corporation. The two corporations were merged pursuant to section 85 of the Stock Corporation Law of the State of New York on or about September 3, 1934, under the name of Crawford Music Corporation, the petitioner herein. The petitioner took over all of the assets and assumed all of the liabilities of DeSylva, Brown & Henderson, Inc.

Both corporations from the dates of incorporation have been engaged in the business of publishing sheet music.

In July 1931 the petitioner entered into a contract with Chappell & Co., Ltd., of London, England, which is stated in a letter addressed to that concern by DeSylva, Brown & Henderson, Inc., and reads in part as follows:

This is to confirm our understanding in reference to our catalog.

We hereby give to you the sole and exclusive publication, mechanical, radio and public performing rights, except as hereinafter reserved, for the British Empire excepting Canada and Australasia, and for the Continent of Europe, of all popular numbers the rights of which for said territory shall be owned by us, and the sole and exclusive publication, mechanical, radio and small performing rights, except as hereinafter reserved, for the British Empire excepting Canada, and for the Continent of Europe, of all the operatic numbers the rights of which for said territory shall be owned by us, published by us during the period of three (3) years commencing on the 20th day of June, 1931, and ending on the 19th day of June, 1934.

You agree to pay us the following royalties:

\*     \*     \*     \*     \*     \*     \*

You agree to furnish us with semi-annual statements for the periods ending June 30th and December 31st in each year, statements and accompanying checks in New York Exchange (less deduction for British Income Tax on royalties earned in the British Isles, and Australasian Income Tax on royalties earned in Australasia) to be delivered to us within forty-five days after such dates.

\*     \*     \*     \*     \*     \*     \*

You are to pay us upon the execution and delivery of this agreement the sum of Twenty-five thousand ($25,000) dollars as an advance of royalty, against which you may apply all royalties earned by us pursuant hereto on numbers placed with you hereunder, and in addition all royalties earned on numbers of our catalog published by you or Victoria Music Publishing Company, Ltd. prior

to June 20, 1931, on copies sold and on mechanicals, performing and broadcasting fees received subsequent to June 20, 1931, during the life of the respective copyrights and renewals thereof. * * *

The letter containing the contract was agreed to and accepted by Chappell & Co., Ltd., and the $25,000 advance royalty paid.

The petitioner also had an oral contract with Gordon V. Thompson, Ltd., of Toronto, Ontario, Canada, for the publication and distribution of songs in Canada, the copyright of which was owned by the petitioner.

Pursuant to the contract with Chappell & Co., Ltd., the petitioner received periodic statements from Chappell & Co., Ltd., showing the gross royalties for which the London distributor was liable, pursuant to the contract. These semiannual statements were made to the petitioner several months after the close of each six-month period. They show the gross royalties to be accounted for in pounds, shillings, and pence, and the amount of the United Kingdom income tax deducted therefrom. The statements are captioned: "Certificate of Deduction of Income Tax from Royalties, etc., in Respect of Copyright. Finance Act, 1927, Section 25." They show the United Kingdom income tax deducted "in accordance with the requirements of the Finance Act, 1927, Section 25, and I further certify that this tax has been or will be paid by me to the proper officer for the receipt of taxes." The taxes shown to be due at the rates of exchange prevailing at the times when the statements were made are as follows:

| | | United Kingdom Tax |
|---|---|---|
| Six-month period ended June 30, 1932 | | $2,219.24 |
| Do. | Dec. 31, 1932 | 980.63 |
| Do. | June 30, 1933 | 926.80 |
| Do. | Dec. 31, 1933 | 611.90 |
| Do. | June 30, 1934 | 1,687.98 |

Under its oral contract with Gordon V. Thompson, Ltd., Toronto, Canada, the petitioner received a statement showing gross royalties earned for the six-month period ended December 31, 1933, of $1,605.54 less a tax paid to the Dominion of Canada with respect to the royalties of $200.69, and for the three-month period ended March 31, 1934, of $889.06, less a tax paid in respect of the royalties to the Dominion of Canada of $111.13.

Petitioner kept its books of account upon the accrual basis. Inasmuch as its books of account for each reporting period had been closed and income tax returns to the collector of internal revenue were due or made prior to the date of the receipt of statements from Chappell & Co., Ltd., and from Gordon V. Thompson, Ltd., the petitioner reported the accrual of royalties from these two distributors as falling within the taxable period for which the books were open at the time. Thus the statement from Chappell & Co., Ltd., for the six-month

period ended June 30, 1932, was not received until after its books of account had been closed for the fiscal year ended August 31, 1932. The gross royalties reported for such six-month period were therefore taken up as income by the petitioner for its subsequent taxable period or the fiscal year ended August 31, 1933. The respondent has accepted the books of account as correctly representing the time of accrual.

In its books of account the petitioner has recorded as gross income the gross royalties reported by Chappell & Co., Ltd., and has credited such gross royalties less United Kingdom income tax against the $25,000 advance royalties.

In the determination of the deficiency the respondent has not given the petitioner credit for any portion of the United Kingdom income tax paid to the Crown by Chappell & Co., Ltd., or any portion of the tax paid to the Receiver General of Canada by Gordon V. Thompson, Ltd., but has allowed the deduction of those taxes in his determination of the net income.

The question for consideration is whether the petitioner is entitled to a credit against income and profits taxes due the United States for the fiscal periods under review of the United Kingdom income taxes paid by Chappell & Co., Ltd., in respect of gross royalties earned upon its contract with that company. The respondent has denied the claim for credit and in lieu thereof has permitted the petitioner to deduct from gross income United Kingdom income taxes paid by its distributors.

United Kingdom income tax is assessable under schedule D of the English income tax acts, providing in material part as follows:

1. Tax under this Schedule shall be charged in respect of—
(a) The annual profits or gains arising or accruing—
(i) to any person residing in the United Kingdom from any kind of property whatever, whether situate in the United Kingdom or elsewhere; and
(ii) to any person residing in the United Kingdom from any trade, profession, employment, or vocation, whether the same be respectively carried on in the United Kingdom or elsewhere; and
(iii) to any person, whether a British subject or not, although not resident in the United Kingdom, from any property whatever, in the United Kingdom, or from any trade, profession, employment, or vocation exercised within the United Kingdom; and
(b) All interest of money, annuities, and other annual profits or gains not charged under Schedule A, B, C, or E, and not specially exempted from tax; * * *.
2. Tax under this Schedule shall be charged under the following cases respectively; that is to say,—
*       *       *       *       *       *       *
Case III.—Tax in respect of profits of an uncertain value and of other income described in the rules applicable to this Case;
*       *       *       *       *       *       *

Case VI.—Tax in respect of any annual profits or gains not falling under any of the foregoing Cases, and not charged by virtue of any other Schedule; and subject to and in accordance with the rules applicable to the said Cases respectively.

Other material statutes involved are as follows:

*Section 18, Finance Act, 1930*

18.—(1) Where any payment to which section twenty-five of the Finance Act, 1927, applied (which section provides *for the taxation of copyright royalties by deduction in cases where the usual place of abode of the owner of the copyright is not within the United Kingdom*) is made through an agent resident in the United Kingdom, and that agent is entitled as against the owner of the copyright to deduct any sum by way of commission in respect of services rendered, the amount of the payment shall for the purpose of Rule 21 of the general rules be taken to be the amount thereof as diminished by the sum which the agent is so entitled to deduct;

Provided that, where the person by or through whom any such payment is made does not know that any such commission is payable or does not know the amount thereof, any tax deducted by or assessed and charged on him shall be computed in the first instance on, and the account to be delivered of the payment shall be an account of, the total amount of the payment without regard being had to any diminution thereof, and in that case, on proof of the facts to the satisfaction of the special commissioners, there shall be made to the agent on behalf of the owner of the copyright such payment of tax as is proper in respect of the sum deducted by way of commission.

(2) Subsection (1) of this section shall apply to payments made after the fifth day of April, nineteen hundred and thirty, and any tax deducted in relation to any such payment made before the passing of this Act in excess of the tax which it would have been proper to deduct if this section had been in force shall be made good, and, on proof of the facts to the satisfaction of the special commissioners, any corresponding excess of tax which has been paid shall be repaid.

(3) The time of the making of a payment to which section twenty-five of the Finance Act, 1927, applies shall, for all the purposes of the Income Tax Acts, be taken to be the time when it is made by the person by whom it is first made and not the time when it is made by or through any other person. [Italics supplied.]

25.—(1) *Where the usual place of abode of the owner of a copyright is not within the United Kingdom, Rule 21 of the General Rules shall apply to any payment of or on account of any royalties or sums paid periodically for or in respect of that copyright as it applies to annual payments not payable out of profits or gains brought into charge.*

(2) In this section the expression "copyright" does not include a copyright in any dramatic work being a cinematograph production, or in any artistic work being a photograph intended to be used for the purpose of the exhibition of pictures or other optical effects by means of a cinematograph or other similar apparatus.

(3) This section shall apply to all payments of or on account of any royalties or sums made on or after the first day of July, nineteen hundred and twenty-seven, for or in respect of any such copyright as aforesaid, and to any payments made between the eleventh day of April, nineteen hundred and twenty-seven, and the said first day of July on account of any such royalties or sums payable in respect of any matter arising on or after the said first day of July.

(4) In this section, the expression "owner of a copyright" includes a person, who, notwithstanding that he has assigned a copyright to some other person, is entitled to receive periodical payments in respect of that copyright, and the reference to royalties or sums paid periodically for or in respect of a copyright shall not include royalties or sums paid in respect of copies of works which are shown to the satisfaction of the Special Commissioners to have been exported from the United Kingdom for distribution outside of the United Kingdom.

(5) Rule 23 of the General Rules shall be extended so as to apply to all payments to which this section applies. [Italics supplied.]

Rule 21 of Income Tax Act, 1918, so far as material, provides as follows:

21.—(1) *Upon payment of any interest of money, annuity, or other annual payment charged with tax under Schedule D, or of any royalty or other sum paid in respect of the user of a patent, not payable, or not wholly payable, out of profits or gains brought into charge, the person by or through whom any such payment is made shall deduct thereout a sum representing the amount of the tax thereon at the rate of tax in force at the time of payment.*

(2) Where any such payment as aforesaid is made by or through any person, that person shall forthwith deliver to the Commissioners of Inland Revenue, for the use of the Special Commissioners, an account of the payment, or of so much thereof as is not made out of profits or gains brought into charge, and of the tax deducted out of the payment or out of that part thereof, and the Special Commissioners shall assess and charge the payment of which an account is so delivered on that person. [Italics supplied.]

Section 131 of the Revenue Acts of 1932 and 1934 provides in material part as follows:

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *.

It is the respondent's contention herein that, since the petitioner did not pay United Kingdom income taxes upon the gross royalties payable to it by Chappell & Co., Ltd., it is not entitled to a credit against the income and profits taxes due the United States of the amounts paid to the British Crown representing United Kingdom income taxes. In support of his position he cites *Mary Duke Biddle,* 33 B. T. A. 127; affd. (C. C. A., 2d Cir.), 86 Fed. (2d) 718; affd., 302 U. S. 573. The question presented in the *Biddle* case was whether the taxpayer was entitled to a credit against her income taxes due the United States of the amount of the United Kingdom income tax paid to the Crown by the British corporations from which she received dividends. It was the holding of the Board in that case that a resident of the United States receiving dividends from a corporation chartered under the laws of the United Kingdom of Great Britain and Ireland is not entitled under section 131 of the Revenue Act of

1928 to a credit of the amount of United Kingdom income taxes "appropriate" to the dividends received, nor is such taxpayer required to include in gross income as a part of the dividends received from foreign corporations the amount of United Kingdom income tax "appropriate" to the dividends. The Supreme Court in its opinion stated:

The tax "appropriate" to the dividend is computed by applying the standard rate for the year of distribution, to the value of the money or other property distributed. The amount so computed will equal the tax paid at the standard rate by the corporation on its profits if, but only if, the tax rate is the same in the year when the profits are earned as in the year when they are distributed.

The Court further stated:

Hence the Board's finding, supported as 'it is by much expert testimony, that "the stockholder receiving the dividend is regarded in the English income tax acts as having paid 'by deduction or otherwise' the tax 'appropriate' to the dividend," is not conclusive. At most it is but a factor to be considered in deciding whether the stockholder pays the tax within the meaning of our own statute. That must ultimately be determined by ascertaining from an examination of the manner in which the British tax is laid and collected what the stockholder has done in conformity to British law *and whether it is the substantial equivalent of payment of the tax as those terms are used in our own statute.* [Italics supplied.]

There can be no question but that in the instant proceedings the petitioner was entitled to the gross royalties computed under the contract with Chappell & Co., Ltd., reduced by the amount of United Kingdom income tax. That tax had to be paid by Chappell & Co., Ltd. It was not assessed and was not assessable under the British income tax acts against the petitioner.

It seems plain, however, from a reading of the British income tax acts, quoted in material part above, that the person who pays United Kingdom income tax upon the royalties of petitioner pays those as the taxes of the petitioner. The tax paid upon the royalties is subject to no deduction whatever by Chappell & Co., Ltd.

In these circumstances we are of the opinion that the petitioner is entitled to a credit against the taxes due the United States of the amounts of United Kingdom income tax paid upon the royalties by Chappell & Co., Ltd.

The income tax imposed by Canada upon royalties due from Gordon V. Thompson, Ltd., is imposed directly upon the petitioner. See section 27 of the Income War Tax Act of Canada. The tax is, however, collected from the Canadian corporation as a withholding agent. On brief the respondent does not argue that petitioner is not entitled to the credit claimed in respect of Canadian income taxes paid.

As will be noted from our findings of fact the petitioner keeps its books of account upon the accrual basis, but, due to the fact that the statements from Chappell & Co., Ltd., were not received in some cases

until after the petitioner's books of account for the fiscal year had been closed, they were returned as being income of the succeeding fiscal period. In a recomputation under Rule 50 the gross royalties should be accounted for as of the date on which they are earned and credits for taxes should be made accordingly.

In Docket No. 88290 the petitioner claimed that it is entitled to a credit against the tax due the United States for the fiscal year ended in 1934 of $311.82 paid to the Canadian Government. It appears, however, that $200.69 of the claimed credit was a tax due and payable in respect of sheet music sold in Canada for the six-month period ended December 31, 1933, and that $111.13 was a tax for the period ended March 31, 1934. The Canadian income tax paid for the petitioner by Gordon V. Thompson, Ltd., will be credited accordingly under Rule 50 of the Board's rules of practice, the petitioner having moved at the conclusion of the hearing to conform its pleadings to the proof.

*Decisions will be entered under Rule 50.*