**123 EAST FIFTY–FOURTH STREET, Inc., v. UNITED STATES.**

District Court, S. D. New York.

July 19, 1945.

Benet Polikoff, of New York City (Jack Clareman, of Brooklyn, N. Y., of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (Stanley H. Lowell, Asst. U. S. Atty., of New York City, and Moses L. Kove, Asst. U. S. Atty., of Albany, N. Y., of counsel), for defendant.

LEIBELL, District Judge.

This action is brought by plaintiff under Section 24, subdiv. 20 of the Judicial Code, 28 U.S.C.A. § 41 (20), to recover a "cabaret tax" alleged to have been erroneously and illegally collected by defendant from the plaintiff. The facts are not in dispute. They are set forth in a written stipulation signed by the attorneys for the parties.

About January 2, 1942, the plaintiff commenced the operation of a restaurant and bar at No. 123 East 54th Street, Borough of Manhattan, New York City, in which piano music was played for the entertainment of the patrons. There were no provisions for dancing or any other form of entertainment within the meaning of § 1700 (e) of the Internal Revenue Code. At the time plaintiff opened the restaurant, the Collector of Internal Revenue of the district, through his agents, informed plaintiff that the restaurant came within the classification of a "cabaret" under § 1700(e), as amended

September 20, 1941, by the Revenue Act of 1941, 26 U.S.C.A. Int.Rev.Acts. Plaintiff complied with the requirements of the Collector and filed the necessary monthly returns paid in the aggregate sum of $7,-629.53 as taxes under § 1700(e) during the period January 2, 1942 to January 31, 1943. In February 1943 plaintiff made no payment of the tax. The Collector instituted an investigation into the nature of the business conducted by plaintiff and in November 1943 he notified plaintiff that it did not come within the purview of § 1700(e) of the Internal Revenue Code and was not required to pay the so-called cabaret tax.

Within a week thereafter plaintiff filed a claim for a refund of the cabaret taxes theretofore paid. The claim stated:

"The amount claimed herein, by way of refund, was erroneously paid by 123 East 54th Street, Inc., pursuant to Section 1700 (e) of the Internal Revenue Code. This section imposes an admissions tax on cabarets, roof gardens, and other similar places furnishing a public performance for profit. A cabaret, roof garden and other similar place, as defined in said section, is a place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded patrons in connection with the serving or selling of food, refreshments, or merchandise.

"123 East 54th Street, Inc. now operates, and during the period for which the tax was paid, has operated a restaurant and bar at 123 East 54th Street, New York City. The corporation does not now, nor has it, at any time during the period for which the tax was paid, furnished any music and dancing privileges or any form of entertainment. Instrumental music only is provided by Roger Stearns, an officer of the corporation, on a piano. No admission, minimum or cover charge is imposed on patrons."

The claim was rejected by the Commissioner of Internal Revenue June 16, 1944, in a letter which reads as follows:

"Reference is made to your claim for refund of $7,629.53 tax and interest on cabaret charges for the period January 1942 through January 1943. The claim is based upon the contention that no liability was incurred since the only entertainment furnished during the period involved was music by a piano, which entertainment did not

constitute a public performance for profit within the meaning of section 1710(e) of the Internal Revenue Code.

"The report of the investigation made discloses that piano music was the only form of entertainment furnished. There was no dancing or singing. However, tax was collected from the patrons and no part of said tax was borne by you, nor was any part of the tax refunded to the patrons. Since the patrons were the actual taxpayers, the amount claimed may not be refunded to you. Your claim is, therefore, rejected in full." [The letter's reference to § 1710(e) was an error. It should have been 1700(e).]

 I do not think that the reasons given for rejecting the claim are valid in the light of the legislative history of the cabaret tax as shown by the pertinent statutes, and the rulings and regulations issued thereunder. The decisions of our highest court, directing refunds to the taxpayer of taxes erroneously paid, recognize the right of the taxpayer to the refund even if he has passed the tax on the patron or consumer, unless the statute bars a refund for that reason.

The Revenue Act of 1941 approved September 20, 1941, became effective October 1st, 1941, and remained in effect in that form until it was further amended November 1st, 1942. It contained, as theretofore, a Chapter 10 entitled "Admissions and Dues", beginning with § 1700 of the Internal Revenue Code.

The Revenue Act of 1941 amended Section 1700(e) of the Internal Revenue Code to read as follows:

"There shall be levied, assessed, collected and paid—* * *

"(e) Tax on Cabarets, Roof Gardens, etc.—

"(1) Rate.—A tax equivalent to 5 per centum of all amounts paid for admission, refreshment, service, and merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, if any payment, or part thereof, for admission, refreshment, service, or merchandise, entitles the patron to be present during any portion of such performance. * * *

"(2) By whom paid.—The tax imposed under paragraph (1), shall be returned and paid by the person receiving such payments."

The above amendment became effective October 1, 1941. There was also an amendment of July 23, 1942, but it is not pertinent to this case.

The Revenue Act of 1942, 56 Stat. 798, 981, further amended § 1700(e). The amendment was approved October 21, 1942, and became effective November 1, 1942. It was still in effect on January 31, 1943. It provided:

"Section 1700(e) (1) (relating to rate of cabaret tax) is amended to read as follows:

" '(1) Rate. A tax equivalent to 5 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term "roof garden, cabaret, or other similar place" shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. A performance shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance. · * * *' "

It will be seen from the above quoted sections of the Internal Revenue Act, that for the period during which plaintiff paid the cabaret taxes (January 2, 1942, to January 31, 1943) the tax was payable by the cabaret owner. This view is supported by a comparison of § 1700(e) as amended September 20, 1941, with that section as it appeared in the June 29, 1939, and June 25, 1940, amendments. There it was provided that "the tax imposed under paragraph (1) shall be paid by the person paying for such refreshment, service, or merchandise." 26 U.S.C.A. Int.Rev.Code, § 1700(e). Under that provision the cabaret owner collected the tax from the patron and was required to hold the tax as a special fund for the United States, under § 3661 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 3661. The September 1941 amendment of § 1700(e) imposed the tax on the cabaret owner, "the person receiving such payments."

The Internal Revenue Cum. Bull. 1941–42, Ruling Mim. 5319, January 26, 1942, page 63 provided:

"14. The tax on admissions to any roof garden, cabaret, or similar place of entertainment as imposed by section 1700(e) prior to the amendment of such section by section 542 of the Revenue Act of 1941, is payable by the person paying for the admission. Effective as of 10 a.m. on October 1, 1941, section 542 of the Revenue Act of 1941 amended section 1700(e) so as to change the basis for tax computation and to shift the liability for the tax to the person receiving the payment for admission, refreshment, service, and merchandise. Hence, cabaret taxes paid subsequent to 10 a.m. on October 1, 1941, are deductible from gross income by the person (i.e., the proprietor or cabaret operator) receiving the payment for admission, etc."

Treasury Regulation 43 effective October 1, 1941, referring to Roof Gardens, Cabarets, etc., provides in part as follows:

"Sec. 101.13 Basis, rate and computation of tax * * *

"The liability for the tax is imposed upon the person receiving payment of the charges mentioned, and the tax must be paid by such person regardless of whether collected from the patron either as a separate charge or by being included in the amounts charged for admission, refreshment, service, and merchandise. * * *"

The distinction between an operator who pays the tax and one who collects it from a patron as an agent for the government, is followed in §§ 1715 and 1716 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 1715, 1716, in respect to taxes imposed under various subdivisions of § 1700.

It seems clear from a reading of the statutes and regulations that in this case the plaintiff, as the cabaret owner, was the taxpayer, and was charged with the obligation of paying the tax.

The government argues that Section 1722 of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 1722, which provides: "all administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, shall be extended to and made a part of this chapter," incorporates by general reference another provision of the Internal Revenue Code, namely section 3443(d), 26 U.S.C.A. Int.Rev.Code, § 3443 (d), which provides:

"Sec. 3443. Credits and refunds. (as amended by Sec. 533, 1941 act; Sec. 307 (a) (b), 1943 Act). * * *

"(d) No overpayment of tax under this chapter shall be credited or refunded (otherwise than under subsection (a)), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund. 53 Stat. 417."

■ Section 3443 is contained in subchapter C entitled "General Administrative Provisions" and is part of Chapter 29 which bears the heading "Manufacturers' Excise and Import Taxes" to which it is specifically applied by its own wording. Section 3443 which became a law June 6, 1932, relates to credits and refunds on manufacturers' excise taxes. It cannot properly be considered as incorporated by reference (through section 1722) into Chapter 10 of the Act, which deals with taxes on admissions and dues. Section 1722 incorporates into Chapter 10 any administrative sections of the Act which would be applicable to the administration of Chapter 10 (such as Chapter 37 relating to Abatements, Credits and Refunds) and any general provision relating to the assessment of taxes.

■ It is to be remembered " * * * that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with particular strictness", and that a tax statute should not be extended by implication or enlarged by construction so as to embrace matters therein not specifically pointed out. Crooks v. Harrelson, 282 U.S. 55, 61, 51 S.Ct. 49, 51, 75 L.Ed. 156; United States v. Merriam, 263 U.S. 179, 188, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; United States v. Field, 255 U.S. 257, 262, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461; Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211.

The government also contends that the plaintiff should not recover on the equitable ground that having passed the tax on to

his customers (it was added to the patron's check for food and refreshments), the plaintiff would be unjustly enriched by the refund. I would like to apply that principle and deny the refund of the tax in this case, but the decisions of our courts are to the contrary.

In Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251, the court was concerned with a tax imposed on soft drinks sold by the manufacturer. The petitioner therein, who was the manufacturer, had paid the tax and he notified its customers of the new tax. The government contended that petitioner had passed the tax on and that the actual price of the goods was the amount received from the customer minus the amount of the tax. The Tax Commissioner rejected the claim for refund. The court, at page 176 of 278 U.S., at page 100 of 49 S.Ct., 73 L.Ed. 251, of its opinion by Mr. Justice Holmes, stated:

"The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. Heckman & Co. v. I. S. Dawes & Son Co., 56 App.D.C. 213, 12 F.2d 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. * * *

"The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price, and if the statute were taken literally, as there would be no reason for not taking it if it were now passed for the first time, there might be difficulty in accepting the Commissioner's distinction even if the tax were made a separate item of the bill. * * * *"

█ The form of the statute is controlling. Biddle v. Commissioner, 2 Cir., 86 F.2d 718, affirmed 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431; Shearer v. Commissioner, 2 Cir., 48 F.2d 552; 20th Century Club v. United States, 92 Ct.Cl. 93, 34 F.Supp. 1021.

The Lash case was decided in 1928, which was prior to the original enactment of section 3443 which imposed limitations on re-funds of manufacturer's excise taxes, and was first embodied in the Internal Revenue Act of 1932. In a number of other cases the Court applied the principle of the Lash decision.

█ I am aware that the plaintiff will receive a windfall and that the result is objectionable, but it is not the function of the court to insert something into the statute which the Congress has not placed there. Perhaps the omission was an oversight. If so, the remedy is with the legislative branch, as pointed out by Justice Sutherland in Crooks v. Harrelson, 282 U.S. 55, at page 60, 51 S.Ct. 49, at page 50, 75 L.Ed. 156:

"Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. [Inhabitants of] Monson v. [Inhabitants of] Chester, 22 Pick., Mass., 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the court."

To the same effect, see Burnet v. Sanford & Brooks Co., 282 U.S. 359, at page 367, 51 S.Ct. 150, 75 L.Ed. 383.

Plaintiff is entitled to judgment against defendant in the amount of $7,629.53 with interest thereon, together with the taxable costs of this action.

I have signed findings of fact and conclusions of law which are being filed together with this opinion.