*Decision will be entered under Rule 50.*

CENTRAL AGUIRRE SUGAR COMPANY, ET AL., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41666. Filed June 30, 1955.

*Carl J. Marold, Esq.*, for the petitioners.
*Joseph Landis, Esq.*, for the respondent.

632

OPINION.

HARRON, *Judge:* The controversy in this proceeding concerns the amount of the foreign tax credit to which petitioner, which is taxable as a domestic corporation, is entitled under section 131 (f) (1) of the 1939 Code with respect to two nonliquidating distributions which it received in the taxable year from its subsidiary, a foreign corporation which paid income and profits taxes to a possession of the United States. The provisions of section 131 (f) (1) are set forth in the margin.[3] Each of the distributions included a distribution of property, stock of another corporation, as well as cash.

---

[3] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(f) TAXES OF FOREIGN SUBSIDIARY.—

(1) FOREIGN SUBSIDIARY OF DOMESTIC CORPORATION.—For the purposes of this section, a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the

The subsidiary, Sugar Company, distributed 3,608 shares of stock of Railroad Company, its subsidiary. The adjusted basis of the 3,608 shares of stock of Railroad Company to Sugar Company was $360,800, and the fair market value of the stock at the time when petitioner received the stock was $1,443,200. The cash dividends distributed by Sugar Company to petitioner amounted to $273,786.22. The petitioner included the dividends of stock and cash in its taxable income for its fiscal year ended July 31, 1945, in the total amount of the fair market value of the stock, plus the cash, namely, $1,716,986.22.

Sugar Company had accumulated profits for its fiscal years 1945, 1944, 1943, 1942, and 1941, without taking into account the appreciation in value of the 3,608 shares of Railroad Company stock, in excess of $1,716,986.22, upon or with respect to which it had paid or accrued foreign income taxes in excess of $380,796.74.

The respondent has allowed a foreign tax credit under section 131 (f) (1) in the amount of $132,876.31 which he computed on the basis of the receipt of a dividend by petitioner in the amount of $634,586.22, which is the sum of $360,800, the adjusted basis of the stock, plus the cash dividends of $273,786.22.

The petitioner contends that the allowable foreign tax credit is $380,796.74 based upon the dividend of $1,716,986.22 upon which it is taxable. It is agreed that Sugar Company's most recently accumulated profits were in excess of $1,716,986.22.

The dispute arises because of the appreciation in value of the Railroad stock in the amount of $1,082,400.

The method of computing the tax credit is not disputed by the parties. They agree as to the amounts to be used as the denominator and multiplicand of the fraction once the issue presented has been decided. The controversy centers on the amount to be used as the numerator. Respondent contends that the numerator (the dividend) should be in the amount of $634,586.22, the total of the cash which was distributed plus $360,800, the adjusted basis of Railroad Company stock to Sugar Company. The petitioner contends that the numerator (the dividend) should be $1,716,986.22, the amount of the dividend which is includible in its gross income.

---

same proportion of any income, war-profits, or excess-profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits. The term "accumulated profits" when used in this subsection in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; and the Commissioner with the approval of the Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings. * * *

The question to be decided is: What is the amount of the dividend which is to be used as the numerator in the fraction by which the amount of the foreign tax credit is to be computed?

The respondent contends that the dividend received by petitioner represented a distribution out of the accumulated profits of Sugar Company to the extent of only its basis for the stock, $360,800, plus the amount of the cash which was also distributed. He bases his contention upon the assertion that no foreign tax was paid upon the appreciation in the value of the stock of Railroad Company, $1,-082,400, because the accumulated profits of Sugar Company, upon which foreign taxes were paid, could not include the unrealized appreciation in value of the stock of the Railroad Company.

It is the statutory scheme, for the purposes of chapter 1 of the 1939 Code, Income Tax, that "any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year," is a dividend. Sec. 115 (a). This provision applies for the purposes of section 131 (f) (1) because it is part of chapter 1. The distributions by Sugar Company of money and other property, stock, were dividends to the extent of the fair market value thereof because Sugar Company had earnings or profits, without resorting to appreciation, in an amount sufficient to cover such fair market value, and its accumulated profits were available for distribution. And the dividends were, under the presumption of section 115 (b), distributed out of Sugar Company's accumulated profits. The presumption contained in section 115 (b) extends to the purposes of chapter 1, and hence it applies for the purposes of section 131 (f) (1). The cash plus the fair market value of the stock of Railroad Company was, therefore, a distribution out of the accumulated profits of Sugar Company, and petitioner's foreign tax credit properly can be computed on the basis of a dividend in the amount of $1,716,986.22 out of accumulated profits which were in excess of $1,717,106.78. It is agreed that Sugar Company had paid foreign taxes upon such profits. We approve petitioner's contention.

The respondent, in our opinion, is precluded in this case by the broad mandate of sections 115 (a) and (b) from restricting the meaning of "dividends" in section 131 (f) (1), which is precisely what he does by the position he takes in this case. To give the term "dividend" one meaning for the purpose of determining taxable income under section 22 (a), and another meaning for the purpose of computing the same taxpayer's foreign tax credit under section 131 (f) (1), as respondent does here, violates the statutory design and ignores the statutory presumption.

Furthermore, the respondent's construction in this case of the term "dividends" in section 131 (f) (1), and his application of that sec-

tion under the facts of this case is not in harmony with the legislative intent which underlies section 131 (f) which, in about the same terms, has been in the Revenue Acts since 1918. That section envisioned the receipt by parent domestic corporations of taxable distributions from foreign subsidiaries, and its purpose was to alleviate to some extent the burdens of double taxation. *American Chicle Co.* v. *United States*, 316 U. S. 450. To treat the distribution as a dividend in one amount, for the purposes of section 22 (a), for the purpose of income tax on petitioner, and to treat the distribution as a dividend in another amount, for the purpose of section 131 (f) (1), in computing the foreign tax credit, has but one result, a frustration of the purposes of section 131 (f) (1) and a curtailment of its applicability. The wording of sections 115 (a) and (b), referring as they do to "any distribution," and "every distribution," and "for the purposes of this chapter" (with exceptions which are not material), calls for a consistent treatment of dividends throughout chapter 1 of the Code.

In his determination, under the facts of this case the respondent has restricted the application of section 131 (f) (1). If his view is in principle the preferable view, then the Congress may adopt it. We may not, by giving approval here to the respondent's determination, legislate upon the subject. Under the facts of this case, we think it is inconsistent and contrary to statutory mandate to treat the distributions in question as taxable dividends in the amount of $1,716,986.22 for the purposes of section 22 (a), and to treat the same distribution as a dividend of only $634,586.22 for the purposes of the foreign tax credit under section 131 (f) (1). The same taxpayer is involved, and the same income is involved, first for income tax, and second for a credit which is intended to obviate double taxation, and, therefore, to alleviate the tax burden. The petitioner seeks a foreign tax credit against income, taxable to it in the full amount under section 22 (a), in the amount of $1,716,986.22. Respondent would allow only a credit with respect to $634,586.22 of such income, even though the foreign tax has been paid on $1,716,986.22. Clearly, he denies petitioner the full benefit of section 131 (f) (1).

In order that there may not be any misunderstanding about the validity of petitioner's claim, it is pointed out that petitioner is not asking for a credit based upon the entire amount of the foreign income tax paid by its subsidiary. Cf. *American Chicle Co.* v. *United States, supra.* Petitioner seeks only a credit for the *proportion* of the amount of foreign taxes paid by its subsidiary which section 131 (f) (1) describes. For example, referring to Sugar Company's most recently accumulated profits: Sugar Company's net earnings before taxes for its fiscal year ended July 31, 1945, were $1,082,308.79. The Puerto Rican income tax thereon was $226,631.89. Net earnings after

the foreign tax amounted to $855,676.90. A part of the foreign tax paid allocable to the latter amount is $179,175.17. Petitioner's share of $855,676.90 is $855,616.83, and a portion of the foreign tax paid allocable to that amount of earnings is $179,157.26; and a proportion of the last amount is what petitioner seeks as a credit.

In *National Carbon Co.*, 2 T. C. 57, the same issue under almost identical facts was considered by this Court. *National Carbon Co.*, has not been reversed. We reach the same result here as was reached there. However, in addition to the reasoning of *National Carbon Co.*, which is closely followed here, we recognize and stress the interrelation of section 22 (a) and section 131 (f) (1), and take into consideration the legislative purpose which underlies section 131 (f) (1).

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

MURDOCK, *J.*, concurring: This case, in my opinion, is not distinguishable from *National Carbon Co.*, 2 T. C. 57, and upon authority of that case I concur in the result.

OPPER and FISHER, *JJ.*, agree with this concurring opinion.