BIDDLE *v.* COMMISSIONER OF INTERNAL
REVENUE.*

No. 55. Argued December 9, 10, 1937.—Decided January 10, 1938.

---

* Together with No. 505, *Helvering, Commissioner of Internal Revenue,* v. *Elkins,* on certiorari to the Circuit Court of Appeals for the Third Circuit.

*Mr. Frank J. Wideman,* with whom *Messrs. Forrest Hyde, William R. Spofford* and *Freeman J. Daniels* were on the brief, for petitioner in No. 55.

*Mr. William R. Spofford,* with whom *Mr. Schofield Andrews* was on the brief, for respondent in No. 505.

*Mr. J. Louis Monarch,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *F. E. Youngman* were on the briefs, for respondent in No. 55 and petitioner in No. 505.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. Ward V. Tolbert* and *John L. McMaster,* on behalf of F. W. Woolworth Co.; *Mr. Bernhard Knollenberg,* on behalf of the National Cash Register Co.; *Mr. Claude R. Branch,* on behalf of the United Shoe Machinery Corp.; and *Mr. Mitchell B. Carroll,* all in support of the taxpayers; and by *Mr. William H. Hotchkiss,* on behalf of the London & Lancashire Insurance Co., in support of the Government.

MR. JUSTICE STONE delivered the opinion of the Court.

In their British income tax returns, stockholders in British corporations are required to report as income, in addition to the amount of dividends actually received, amounts which reflect their respective proportions of the tax paid by the corporation on its own profits. The principal question raised by these petitions is whether these amounts constitute "income . . . taxes paid or accrued during the taxable year to [a] foreign country" so as to entitle the stockholders, if they are citizens of the United States, to credits of those amounts upon their United States income tax, by virtue of § 131 (a) (1) of the Revenue Act of 1928. A further question is whether any of the amounts not so available as a credit may be deducted from gross income under § 23 (c) (2) of the Act for the purpose of ascertaining the net income subject to tax.

Petitioner in No. 55 and respondent in No. 505, hereafter called the taxpayers, received cash dividends during the taxable years 1929 and 1931, respectively, on their stock in three British corporations. Each of the corporations having itself paid or become liable to pay the British tax on the profits thus distributed, no further exaction at the "standard" (normal) rate was due the British government on account of the distribution from either the stock-

holders or the corporation.[1]  Only in the case of individuals whose income exceeds a stated amount is a surtax levied.  In these circumstances the corporations are directed to certify to shareholders, at the time of sending out warrants for the dividends, the gross amount from which the income tax "appropriate thereto" is deducted, the rate and amount of the income tax appropriate to the gross amount, and the net amount actually paid.[2]

The tax "appropriate" to the dividend is computed by applying the standard rate for the year of distribution, to the value of the money or other property distributed.[3] The amount so computed will equal the tax paid at the standard rate by the corporation on its profits if, but only if, the tax rate is the same in the year when the profits are earned as in the year when they are distributed.

One of the companies availed itself of the statutory permission [4] to declare a gross dividend, from which it deducted the tax before actual distribution, certifying to the

---

[1] British Income Tax Act 1918, 8 and 9 Geo. V, c. 40, as amended by § 38, Finance Act of 1927, 17 and 18 Geo. V, c. 10.  General Rule 1 of the 1918 Act provides, "Every body of persons shall be chargeable to tax in like manner as any person is chargeable under the provisions of this Act."  By § 237 of the 1918 Act "body of persons" includes "any company . . . whether corporate or not corporate."

[2] Section 33, Finance Act of 1924, 14 and 15 Geo. V, c. 21.

[3] The Act of 1918 prescribes general rules for the assessment and collection of taxes "on profits from property, trade or business."  By General Rule 20 it is provided that the tax is to be paid on the "full amount" of the profit "before any dividend thereof is made in respect of any share . . . and the body of persons paying such dividend shall be entitled to deduct the tax appropriate · thereto."  The tax "appropriate" to a dividend payment is the standard rate of tax for the year in which the dividend is declared, regardless of the rate at which the amount distributed was in fact taxed when it was received by the company.  *Hamilton* v. *Commissioners of Inland Revenue,* 16 British Tax Cases, 213, 229, 234; *Neumann* v. *Commissioners of Inland Revenue,* 18 British Tax Cases, 332, 359, 361.

[4] General Rule 20, Income Tax of 1918.

taxpayers that the dividend would be paid "less" income tax. The other two companies declared the dividend in the amount distributed to stockholders and certified that it was "free of tax." The certificates of the latter did not purport to show any deduction of tax from a gross dividend, but did indicate the amount of the tax appropriate to the dividend and showed the same net return to stockholders as if the tax had been deducted from a computed gross dividend.

In their returns transmitted to the Department of Inland Revenue of the British government, the taxpayers reported as income subject to surtax the amount of income taxes appropriate to their dividends, in addition to the money actually received, and paid surtaxes on that total sum. In their United States income tax returns for those years, the taxpayers included in gross income the entire sums so reported in the British returns. Up to the limit set by § 131 (b), they claimed as credits against the tax payable to the United States the amount of British tax appropriate to the dividends as well as the amount of surtax paid. A deduction from gross income was claimed under § 23 (c) (2) for the amount by which the limit was exceeded.

Deficiency assessments of the taxpayers were brought to the Board of Tax Appeals for review. There the issues were narrowed to the questions now before us, whether the taxpayers, after adding to gross income the amounts included in the British returns as taxes appropriate to the dividends received, were then entitled to deduct those amounts from the tax as computed, to the extent permitted by § 131 (b), and whether the excess was a permissible deduction from gross income.

The board held that the sums in dispute should not have been included in gross income, because they represented neither property received by the taxpayers nor the discharge of any taxes owed by them to the British

government. It held further that § 131 (a) (1) of the Revenue Act of 1928, which directs that the income tax be credited with "the amount of any income . . . taxes paid or accrued during the taxable year to any foreign country . . ." is inapplicable because the United Kingdom fails to tax dividends at the normal rate, and hence the taxes appropriate to dividends were paid by the corporations rather than the taxpayer stockholders.

In No. 55 the Court of Appeals for the Second Circuit affirmed the determination of the board, 86 F. (2d) 718, since followed by that circuit in *F. W. Woolworth Co.* v. *United States,* 91 F. (2d) 973, and the Court of Appeals for the Third Circuit, in No. 505, reversed, 91 F. (2d) 534, following a decision of the Court of Appeals for the First Circuit in *United Shoe Machinery Corp.* v. *White,* 89 F. (2d) 363. We granted certiorari to resolve this conflict of decision, and because of the importance of the question in the administration of the revenue laws.

At the outset it is to be observed that decision must turn on the precise meaning of the words in the statute which grants to the citizen taxpayer a credit for foreign "income taxes paid." The power to tax and to grant the credit resides in Congress, and it is the will of Congress which controls the application of the provisions for credit. The expression of its will in legislation must be taken to conform to its own criteria unless the statute, by express language or necessary implication, makes the meaning of the phrase "paid or accrued," and hence the operation of the statute in which it occurs, depend upon its characterization by the foreign statutes and by decisions under them. Cf. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 294; *Weiss* v. *Weiner,* 279 U. S. 333, 337; *Burnet* v. *Harmel,* 287 U. S. 103, 110.

Section 131 does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that

in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterizations and classifications of tax legislation. The phrase "income taxes paid," as used in our own revenue laws, has for most practical purposes a well understood meaning to be derived from an examination of the statutes which provide for the laying and collection of income taxes. It is that meaning which must be attributed to it as used in § 131.

Hence the board's finding, supported as it is by much expert testimony, that "the stockholder receiving the dividend is regarded in the English income tax acts as having paid 'by deduction or otherwise' the tax 'appropriate' to the dividend" is not conclusive. At most it is but a factor to be considered in deciding whether the stockholder pays the tax within the meaning of our own statute. That must ultimately be determined by ascertaining from an examination of the manner in which the British tax is laid and collected what the stockholder has done in conformity to British law and whether it is the substantial equivalent of payment of the tax as those terms are used in our own statute.

We are here concerned only with the "standard" or normal tax. The scheme of the British legislation is to impose on corporate earnings only one standard tax, at the source, and to avoid the "double" taxation of the corporate income as it passes to the hands of its stockholders, except as they are subject to surtax which the corporation does not pay. The corporation pays the standard tax and against it the remedies for non-payment run. It has been intimated that the shareholder may be held to payment of the tax in the event of the corporation's default, *Hamilton* v. *Commissioners of Inland Revenue,* 16 British Tax Cases, 213, 236, but the contrary view finds more support in judicial opinion, *id.* at 230; *Dalgety & Co., Ltd.* v. *Commissioners of Inland Revenue,* 15 British Tax Cases, 216.

238; *Neumann* v. *Commissioners of Inland Revenue,* 18 British Tax Cases, 341, 345, 358, 362–363, 368, and was adopted by the taxpayers' expert.

Although the corporation, in the United Kingdom as here, pays the tax and is bound to pay it, the tax burden in point of substance is passed on to the stockholders in the same way that it is passed on under our own taxing acts where the tax on the corporate income is charged as an expense before any part of the resulting net profit is distributed to stockholders. See Magill, Taxable Income, 24 *et seq.* Whether the tax is deducted from gross profits before a dividend is declared, or after, when the deduction is taken from the gross dividend, the net amount received by the stockholder is the same. Under either system, if no dividend is declared no tax is paid by the stockholder.[5] If a dividend is declared it must be paid, however the deduction is made, from what is left after the corporation has paid taxes upon its earnings. The differences in the two methods of deduction are to be found only in the formal bookkeeping data which, in the British system, are communicated to the stockholders, not for the purpose of laying or collecting the tax which the corporation has already paid or must pay, but to aid the stockholders in computing their surtax and in securing the benefit of any refund of the tax.

The stockholders' surtax is computed upon the gross dividend, the dividend which he actually receives plus the tax deducted.[6] If the stockholder's income is exempt or less than the minimum amount subject to the tax, refund is made to him of the proportionate share of the tax paid

---

[5] Cf. *Dalgety & Co., Ltd.* v. *Commissioners of Inland Revenue,* 15 British Tax Cases 216, 238; *Neumann* v. *Commissioners of Inland Revenue,* 18 British Tax Cases 341, 345, 358, 362–363, 368.

[6] *Hamilton* v. *Commissioners of Inland Revenue,* 16 British Tax Cases 213, 229, 234; *Neumann* v. *Commissioners of Inland Revenue,* 18 British Tax Cases 332, 345, 358–360, 361.

by the corporation.[7]  It is upon these features of the British system that the taxpayers chiefly rely to support their argument that the stockholder pays the tax.  For these limited purposes, which do not affect the assessment and payment of the tax, it is true that the British acts treat the stockholder as though he were the taxpayer.  But with respect to the surtax the stockholder pays it and the taxpayers here have received for its payment the credit which our statute allows.  Inclusion of the deducted amount in the base on which surtax is calculated, together with the provisions for refund of the tax to the stockholder who, in any event, bears its economic burden, are logical recognitions of the British conception that the standard tax paid by the corporation is passed on to the stockholders.

Our revenue laws give no recognition to that conception.  Although the tax burden of the corporation is passed on to its stockholders with substantially the same results to them as under the British system, our statutes take no account of that fact in establishing the rights and obligations of taxpayers.  Until recently they have not laid a tax, except surtax, on dividends, but they have never treated the stockholder for any purpose as paying the tax collected from the corporation.  Nor have they treated as taxpayers those upon whom no legal duty to pay the tax is laid.  Measured by these standards our statutes afford no scope for saying that the stockholder of a British corporation pays the tax which is laid upon and collected from the corporation, and no basis for a decision that § 131 extends to such a stockholder a credit for a tax paid by the corporation—a privilege not granted to stockholders in our own corporations.  It can hardly be said that a tax paid to the Crown by a British corporation subject to United States income tax is not a tax paid

---

[7] Income Tax Act of 1918, §§ 29 (1), 55 (1), 211 (1) as amended by Finance Act, 1920, § 27 (1).

582

within the meaning of § 23 (c) (2), of the 1928 Act, which allows a deduction from gross income for taxes paid to a foreign country, cf. *Welch* v. *St. Helens Petroleum Co.*, 78 F. (2d) 631, or that its stockholders could take credit under § 131 for their share of the tax on the theory that they also had paid it.

The taxpayers urge that departmental rulings sustaining credits or deductions by stockholders of British corporations, S. M. 3040, IV–1 C. B. 198; S. M. 5363, V–1 C. B. 89; I. T. 2401, VII–1 C. B. 126; G. C. M. 3179, VII–1 C. B. 240, have taken on the force of law by virtue of the reënactment of the deduction and credit provisions carried into §§ 23 and 131 of the 1928 Act. Laying aside the fact that departmental rulings not promulgated by the Secretary are of little aid in interpreting a tax statute, *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 467–468, these rulings rest for their conclusions as to the application of § 131 upon their interpretation of the nature and effect of the British legislation. The presumption that Congress, in reënacting a statute, can ascertain the course of administrative interpretation and, knowing its own intent, will correct the administrative ruling if mistaken, cannot apply to rulings upon the intent of other legislative bodies. So far as the rulings with which we are now concerned sought to state the force and effect of British law they can have no more binding effect on courts than in the case of any determination of fact which calls into operation the taxing statutes. So far as they have construed our own statute as adopting the British characterization, they plainly misinterpret an unambiguous provision. Where the law is plain the subsequent reënactment of a statute does not constitute adoption of its administrative construction. *Iselin* v. *United States*, 270 U. S. 245; *Louisville & N. R. Co.* v. *United States*, 282 U. S. 740; *Helvering* v. *New York Trust Co., supra.*

What we have said is decisive of the second question, whether any of the amounts not available for credit under § 131 may be deducted from gross income for the purpose of arriving at taxable net income. By § 23 (c) (2) of the 1928 Act the deductions of "income . . . taxes imposed by the authority of any foreign country" are limited to taxes paid or accrued. Since we have held that the taxpayer has not paid or become subject to the foreign tax here in question, the section by its terms is inapplicable.

*No. 55, affirmed.*
*No. 505, reversed.*

MR. JUSTICE McREYNOLDS, MR. JUSTICE SUTHERLAND, and MR. JUSTICE BUTLER are of opinion that the applicable rule was correctly stated by the lower court in No. 505, *Elkins* v. *Commissioner*, 91 F. (2d) 534, and by the Circuit Court of Appeals for the First Circuit in *United Shoe Machinery Corp.* v. *White*, 89 F. (2d) 363, and that the challenged judgment in No. 55 should be reversed and that in No. 505 affirmed.