THE O. K. TOOL COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1698. Promulgated January 8, 1945.

*Frederick W. Marquand, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $7,020.84 in the income tax of the petitioner for 1939. The issue is whether the petitioner is entitled to a credit under section 131 (a) (1), Internal Revenue Code,[1] for taxes paid or accrued during the taxable year to a foreign country. The petitioner in its return signified its desire to have the benefits of that section. The only question is whether this particular corporation paid or properly accrued any taxes to Great Britain. The case was submitted on a written stipulation of facts, which is adopted as our findings of fact.

The petitioner is a corporation organized under the laws of the State of New York. It filed its return for the taxable year with the collector of internal revenue at Hartford, Connecticut.

The petitioner owned certain United States and British patents for cutting tools and tool holders. It granted a license on July 3, 1939, to Richard Lloyd & Co., Ltd., a British company, to manufacture and sell goods covered by the patents. The British company was required to pay the petitioner a royalty equal to 5 percent of the net selling prices obtained for the articles. The agreement provided that the minimum total consideration for the first five years should be £10,000, "plus any and all British income and other British taxes which may be levied against such consideration or the licensor by

---

[1] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this chapter shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *

reason thereof." It recited that £9,000 of this amount had been paid upon the signing of the agreement and the balance of £1,000 would be paid four years later, on July 1, 1943, or sooner if total gross sales amounted to £180,000. The £10,000 was to be net to the licensor over and above all British taxes, which taxes the licensee agreed to pay.

The £9,000 aforesaid was the only amount paid in 1939. The licensee furnished the petitioner with a "Certificate of Deduction of Income Tax" dated October 1939, showing a gross payment of £13,846.3.1 and a deduction therefrom of £4,846.3.1. The difference between these two amounts, of course, was £9,000. The petitioner reported on its return as income from royalties under this license agreement, $64,-782.69, the equivalent in dollars of £13,846.3.1, and claimed $11,227.66 as a credit under section 131 (a) (1) for income tax paid to a foreign country. The credit claimed represents the total deduction of £4,846.3.1 at the dollar exchange and as limited by section 131 (b). The Commissioner denied the credit, explaining that the British tax on royalties from patents is not a tax against the owner of the patents. He also reduced the amount reported as income to the net amount actually received by the petitioner.[2]

This Court held in *Irving Air Chute Co.*, 1 T. C. 880, that the tax which a British licensee pays to Great Britain under general rule 19 (2) of the British Income Tax Act of 1918 (8 & 9 Geo. 5, ch. 40), as amended, in respect of royalties which it had remitted to its American licensor was a tax of the licensee and not of the licensor. That case was affirmed, 143 Fed. (2d) 256; certiorari denied, 323 U. S. 773. See also *Trico Products Corporation*, 46 B. T. A. 346, (affirmed, on another issue). Cf. *Biddle* v. *Commissioner*, 302 U. S. 573. In other words, it was held in the *Irving Air Chute* case that the tax was imposed upon the entire profits or gains of the licensee, without deduction for royalties paid, and the licensee, in paying the tax, was paying only its own tax and was not at the same time paying any tax on account of the American licensor, notwithstanding the fact that the licensee withholds from the royalties a sum representing the tax thereon. If rule 19 (2) applies here, then the two cases are not distinguishable. The petitioner concedes this and argues that the *Irving Air Chute* case was incorrectly decided. This Court, of course, adheres to its decision in the *Irving Air Chute* case.

The petitioner has another contention. It is that rule 19 (2) does not apply here, but, instead, rule 21 (1) applies. The provisions of these two rules are as follows:

19.–(2). Where any royalty, or other sum, is paid in respect of the user of a patent, wholly out of profits or gains brought into charge to tax, the person

---

[2] This amount is stipulated to be $41,108.75, but appears actually to have been $42,108.75 ($64,782.69 less $22,673.94).

paying the royalty or sum *shall be entitled,* on making the payment, to deduct and retain thereout a sum representing the amount of the tax thereon at the rate or rates of tax in force during the period through which the royalty or sum was accruing due.

21.–(1). Upon payment of any interest of money, annuity, or other annual payment charged with tax under Schedule **D**, or of any royalty or other sum paid in respect of the user of a patent, not payable, or not wholly payable, out of profits or gains brought into charge, the person by or through whom any such payment is made *shall deduct* thereout a sum representing the amount. of the tax thereon at the rate of tax in force at the time of the payment. [Italics supplied.]

The petitioner seems to say that resort must be had to the contract under which the royalties were payable in order to determine which one of these rules applies. If the contract provided that the royalties were to be payable only out of profits, then rule 19 (2) applies. But if the royalties are payable under that contract regardless of profits, and in any event, that is, even if there are not profits or are insufficient profits, then rule 21 (1) applies. He points to the difference in the language of the two provisions, particularly the italicized words, and says that the tax under 21 (1) is imposed on the licensor. He fails to prove that this is the British law and to cite any authorities in support of his argument. This does not appear to be a proper interpretation of the British law. There is nothing to indicate that the British taxing authorities were at all concerned as to whether the contract provided that the royalties should be paid only out of profits or whether they should be paid even if profits were insufficient. They were concerned with the collection of the revenue. Apparently they thought that if the licensee had profits equal to the amount of the royalties, the British Government could safely rely upon such a company to pay its taxes and need not *require* that company to withhold any amount from the licensor which it desired to pay. But if the British company did not have sufficient income of its own during the year with which to pay the taxes in any year, then the British Government would not take any chances, but required the licensee to withhold the amount of the tax from the royalties. In other words, rule 19 (2) applies if the British company had sufficient income subject to tax to pay the royalties, whereas 21 (1) applies if it had not enough income for this purpose in any given year. Not only is this the reasonable and natural interpretation of the words used, but in the *Irving Air Chute* case there are certain findings of fact on the British law with supporting cases to indicate that such was the purpose of the law. Here the British licensee had sufficient "profits or gains brought into charge to tax" to make rule 19 (2) applicable. The *Irving Air Chute* case controls and the petitioner's argument falls, regardless of what the situation would be if rule 21 (1) applied.

*Decision will be entered for the respondent.*