**NATIONAL CASH REGISTER CO.,**
**Plaintiff-Appellee,**

**v.**

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 18109.**

United States Court of Appeals
Sixth Circuit.

Sept. 12, 1968.

J. Edward Shillinburg, Dept. of Justice, Washington, D. C., for appellant, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Attys., Dept. of Justice, Washington, D. C., on brief, Robert M. Draper, U. S. Atty., Roger J. Makley, Asst. U. S. Atty., Dayton, Ohio, of counsel.

George W. Beatty, Washington, D. C., for appellee, Philip R. Becker, Cowden, Pfarrer, Crew & Becker, Dayton, Ohio, Charles E. Martin, James E. Rambo, Dayton, Ohio, Joseph G. Blandi, C. Rudolf Peterson, Lee, Toomey & Kent, Washington, D. C., on brief.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

During 1958 National Cash Register Company, a Maryland corporation with its principal place of business in Dayton, Ohio, owned all of the voting stock of two subsidiary corporations, The National Cash Register Company Limited (NCR Ltd.) and The National Cash Register (Manufacturing) Limited (NCR Mfg.). Both of the subsidiaries were organized under the laws of and were operated in the United Kingdom.

The issue in this case is whether, with respect to standard tax paid by a United Kingdom subsidiary, a United States corporation which received dividends in 1958 [1] from a wholly owned United Kingdom subsidiary is entitled to a foreign tax credit under both § 902 of the Internal Revenue Code [2] and Article XIII(1)

[1]. The year in which the dividends were received is pertinent to the issue, because there would be no occasion to claim multiple credits under present British tax law.

[2]. "Sec. 902. *Credit for Corporate Stockholder in Foreign Corporation.*

"(a) *Treatment of Taxes Paid by Foreign Corporation.*—For purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession

of the United States-United Kingdom Income Tax Convention of 1945, as amended.[3] The District Court held that the taxpayer corporation was entitled to take a credit for the standard tax under both § 902 and the Tax Convention and entered judgment in favor of the taxpayer and against the Government for a refund of $508,643.65 plus interest of $96,263.84. The Government appeals, contending that provisions of § 902 and Article XIII(1) are mutually exclusive and that the taxpayer is not entitled to a credit under both with respect to the standard tax.

## The British Dividend Tax

In order to answer the question presented it is necessary to understand some of the principles of British taxation of corporate dividends. The two subsidiary corporations were subject to the United Kingdom standard tax, an income tax imposed at the flat rate of 38.75 per cent. As British corporations, both subsidiaries were also subject to a profits tax levied at the rate of ten per cent. The standard tax applies both to individuals and to corporations. The profits tax applies only to corporations. Neither tax is deductible in computing the other.

In 1958 both subsidiaries paid dividends "free of standard tax" to the parent corporation. In the United Kingdom a corporate dividend may be declared either "free of standard tax" or "with deduction of standard tax." [4] These United Kingdom tax concepts have no parallel in the tax treatment of dividends by the United States.

A British corporation pays dividends out of profits from which standard tax and profits tax already have been deducted. When a dividend is declared "free of standard tax," it means (1) that the declared amount of the dividend is actually paid to the shareholder and (2) that the dividend is not subject to any additional United Kingdom tax after it has been paid to the shareholder.[5] When the shareholder is reporting his income, however, he is required to include the amount of the dividend actually received plus an amount representing the proportional share of the standard tax that the cor-

---

of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits.

    *     *     *     *     *

"(c) *Applicable Rules.—*

"(1) The term 'accumulated profits', when used in this section in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war profits, and excess profits taxes imposed on or with respect to such profits or income; * * *"

3.          "ARTICLE XIII
"(1) Subject to Sections 901 to 905 of the United States Internal Revenue Code as in effect on the 1st day of January 1956, United Kingdom tax shall be allowed as a credit against United States tax. For this purpose
   "(a) the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom tax appropriate to such dividend, and
   "(b) the recipient of any royalty or other amount coming within the scope of

Article VIII of the present Convention shall be deemed to have paid any United Kingdom tax legally deducted from the royalty or other amount by the person by or through whom any payment thereof is made,

if the recipient of the dividend or royalty or other amount, as the case may be, elects to include in his gross income for the purposes of United States tax the amount of such United Kingdom income tax."

4. The distinction between a dividend "free of standard tax" and a dividend "with deduction of standard tax" is of no consequence. In Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 580, 58 S.Ct. 379, 82 L.Ed. 431, Mr. Justice Stone said: "The differences in the two methods of deduction are to be found only in the formal bookkeeping data which, in the British system, are communicated to the stockholders, * * *."

5. However, an individual shareholder is subject to a surtax on a dividend "free of standard tax" if his income reaches a certain level. A corporation is not subject to the surtax.

poration has paid on the earnings from which the dividend was distributed.[6] In British tax nomenclature the phrase "standard tax appropriate to the dividend" refers to the pro rata share of the standard tax which the corporation has paid on the earnings from which the dividend was paid. A corporation is treated as a conduit composed of its shareholders. Although the shareholder reports the dividend actually received plus the standard tax appropriate to the dividend, the shareholder is not subject to any tax on the dividend. "The scheme of the British legislation is to impose on corporate earnings only one standard tax, at the source, and to avoid the 'double' taxation of the corporate income as it passes to the hands of its stockholders, * * *." Biddle v. Commissioner of Internal Revenue, supra, 302 U.S. 573, 579, 58 S.Ct. 379, 382.

### The Tax Convention

Because of the decision in Biddle v. Commissioner of Internal Revenue, supra, 302 U.S. 573, 58 S.Ct. 379, a special treaty provision was deemed necessary to afford United States stockholders a foreign tax credit for the standard tax appropriate to the dividend received from a United Kingdom corporation. In *Biddle* the Supreme Court held that for purposes of United States taxation the standard tax appropriate to the dividend was a tax imposed on the British corporation, not a tax imposed on the recipient of the dividend. Having characterized the standard tax as a tax imposed upon and collected from the corporation, the Court found that a shareholder was not warranted in taking a credit for a tax which he did not pay.

■ Article XIII(1) of the Tax Convention provides that if the shareholder in the United States receiving a dividend paid by a British corporation elects to include in his gross income the amount of the standard tax appropriate to the dividend, the recipient will be deemed to have paid the standard tax appropriate to the dividend. Accordingly, the shareholder who complies with the inclusion requirement of Article XIII(1) is allowed a direct credit against his United States tax for the amount of the standard tax appropriate to the dividend. It is to be emphasized that the foreign tax credit provided by Article XIII(1) is limited to the standard tax appropriate to the dividend. No credit is available under Article XIII(1) for the standard tax which is allocable to the portion of the corporate earnings which are not distributed as dividends. Nor does Article XIII(1) offer a foreign tax credit for other United Kingdom taxes, such as the profits tax.

### Section 902, Internal Revenue Code

■ Section 902 permits a domestic corporation owning at least ten per cent of the voting stock of a foreign corporation from which it receives dividends in any taxable year to take a credit for a fractional portion of the taxes paid by the foreign corporation. Unlike Article XIII(1), which limits the credit to the standard tax paid by the corporation, § 902 provides a credit for "any income, war profits or excess profits taxes" paid by the foreign corporation. In American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591, the Supreme Court established the formula for the § 902 credit for taxes deemed to have been paid on profits distributed as dividends. The numerator is the dividends received by the parent corporation. The denominator is the accumulated profits of the foreign subsidiary corporation. The multiplicand is the taxes paid upon or with respect to the accumulated profits of the foreign corporation; i. e., "so much of the taxes as is properly attributed to the accumulated profits, or the same proportion of the total taxes which the accumulated profits bear to the total

---

6. For example: If a British corporation declared a dividend of $6.00 "free of standard tax" and if the standard tax were imposed at the rate of 40 per cent, the shareholder would have to report $10.00, representing $6.00 for the dividend received and $4.00 for the standard tax appropriate to the dividend.

profits." 316 U.S. at 452, 62 S.Ct. at 1145.[7]

█ It is important to note that § 902 limits the credit for foreign taxes to that proportion of the tax which the dividend received by the domestic corporation bears to the total profits of the foreign corporation. Although the foreign corporation may have paid foreign taxes in a given year, under § 902 the domestic corporation is not entitled to any credit for those foreign corporation taxes for a year in which it receives no dividends from the foreign corporation. Abbot Laboratories International Co. v. United States, 160 F.Supp. 321, 328 (N.D.Ill.), aff'd per curiam, 267 F.2d 940 (7th Cir.).

#### The Claim for Double Credits

Coming now to the factual details of the present case, the two subsidiaries during 1958 had total profits before payment of taxes and accumulated (after tax) profits as follows:

|  | Total profits | Accumulated profits |
| --- | --- | --- |
| NCR Ltd. | $2,409,564.52 | $1,235,244.93 |
| NCR Mfg. | 3,927,833.75 | 1,886,861.66 |
| Total: | $6,337,398.27 | $3,122,106.59 |

The 1958 taxes paid by the subsidiaries were as follows: [8]

|  | United Kingdom | | Miscellaneous | |
|  | Standard Tax | Profits Tax | Foreign Income Taxes | Total Tax |
| --- | --- | --- | --- | --- |
| NCR Ltd. | $ 961,654.96 | $207,583.57 | $5,081.06 | $1,174,319.59 |
| NCR Mfg. | 1,705,578.99 | 335,393.10 |  | 2,040,972.09 |
| Total: | $2,667,233.95 | $542,976.67 | $5,081.06 | $3,215,291.68 |

———◆———

Out of the accumulated profits remaining after payment of the foregoing taxes, the two subsidiaries paid certain dividends to the taxpayer. The taxpayer also received certain other income from NCR Mfg. These amounts were as follows:

|  | Accumulated profits | Dividends declared and received | Other income |
| --- | --- | --- | --- |
| NCR Ltd. | $1,235,244.93 | $1,019,190.01 |  |
| NCR Mfg. | 1,886,861.66 | 1,571,981.25 | $1,693,857.13 |
| Total: | $3,122,106.59 | $2,591,171.26 | $1,693,857.13 |

7. This formula is set forth in its fractional form in 5 Mertens, Law of Federal Income Taxation, § 33.14 (rev. 1963).

8. NCR Ltd. was also subject to certain income taxes imposed by countries other than the United Kingdom or the United States which for the purposes of the § 904 limitation on the amount of the foreign tax credit are deemed to have been paid to the United Kingdom.

The dividends received by the taxpayer were declared "free of standard tax."

The District Court allowed the taxpayer's computation which (1) took a direct credit under Article XIII(1) for the standard tax appropriate to the dividend plus (2) an indirect credit under § 902 for the remaining standard tax which was allocable either to earnings which were retained after the payment of dividends or to earnings which were used to pay United Kingdom profits tax.[9] In determining whether a credit for standard tax appropriate to the dividend may be taken under Article XIII(1) and another credit taken under § 902 for the remaining standard tax, we are faced with a situation in which neither the express language nor the published history of the Code or the Tax Convention provides definitive guidance.

The taxpayer contends that Article XIII(1) treats the standard tax appropriate to the dividend as a withholding tax and that under *Biddle* the remaining standard tax must be treated as a corporate income tax paid by the British subsidiary corporations. Following this reasoning, the District Court said: "Article XIII does not say or imply that only a part of the United Kingdom tax should be allowed as a credit and the Court can find no reason for doing so." We cannot agree.

█ The purpose of the Code and of the Convention is to avoid the incidence of double taxation by different nations of the same dividends. The avowed purpose of the Tax Convention is the "avoidance of double taxation and the prevention of fiscal evasion."[10] Explaining the purpose of the statutory predecessor of § 902, the Supreme Court said:

"If, as is admitted, the purpose is to avoid double taxation, the statute, as written, accomplishes that result. The parent receives dividends. Such dividends, not its subsidiary's profits, constitute its income to be returned for [United States] taxation." American Chicle Co. v. United States, supra, 316 U.S. 450, 452, 62 S.Ct. 1144, 1145.

By limiting its credit to the standard tax appropriate to the dividend, Article XIII(1) does not permit any credit for standard tax which is not allocable to earnings distributed as dividends.[11] Section 902 allows a credit only for foreign taxes on the portion of the foreign corporation's earnings which are distributed as dividends to a domestic corporation.

Having availed itself of the Article XIII(1) credit for the standard tax appropriate to the dividend, the taxpayer's use of a § 902 credit for the remaining standard tax results in a credit for foreign taxes allocable to earnings which were not distributed as dividends.[12] A domestic corporation is not taxed on the entire earnings of a foreign corporation in which it owns stock unless the foreign corporation distributes all of its earnings as dividends to the domestic corporation. In the present case the two foreign subsidiaries retained a portion of their earnings. Because the United States taxes only the dividends paid by

9. The reason that some of the standard tax was allocable to the payment of profits tax is that the standard tax is not deducted in the computation of the profits tax.

10. Alexander, The Income Tax Convention with the United Kingdom, 2 Tax L. Rev. 295.

11. After *Biddle* the only shareholder entitled to a tax credit for United Kingdom standard tax was a corporate shareholder qualifying for indirect credit under the predecessor of § 902. Although Article XIII(1) is available to domestic corporations, it is clear that this provision was undertaken in order to give relief from

*Biddle* to individual shareholders and to domestic corporations which did not own enough stock to qualify for § 902 treatment. Senate Hearings before a Subcommittee of the Committee on Foreign Relations on Conventions with Great Britain and Ireland Respecting Income and Estate Taxes, 79th Cong., 1st Sess., p. 47 (2 Leg. Hist. of Tax Conv., 2583, 2613).

12. The Government concedes the correctness of the taxpayer's computation to the extent that § 902 is used to compute credits for the United Kingdom profits tax and the miscellaneous foreign income taxes.

foreign corporations, there is no danger of international double taxation with respect to the earnings which the foreign corporation retains. In order to effectuate the purpose of the Code and the Convention, the taxpayer must elect either Article XIII(1) or § 902 of the Internal Revenue Code for computing its foreign tax credit with respect to the United Kingdom standard tax appropriate to the dividend.[13]

### Conclusion

We conclude that the District Court erred in ordering a refund of taxes based upon the taxpayers use of Article XIII(1) of the Convention and § 902 of the Code in combination. To allow resort to both the Convention and the statute would be to permit credits for standard taxes in excess of that which Congress, in enacting § 902, deemed necessary to alleviate the burden of international double taxation.

As said by this Court speaking through Judge Simons in Gentsch v. Goodyear Tire & Rubber Co., 151 F.2d 997, 1000:

"We think, therefore, that the controlling principle of statutory construction is not that which requires special tax exemptions to be strictly construed, but rather the principle so often announced as not to require citation, that statutes must be so construed as to give effect of their general purpose and to implement the policy of the Congress. Relief from double taxation is not so much an act of grace as one of justice in determining the true net income of the taxpayer."

We hold that § 902 affords no credit for standard taxes in combination with Article XIII(1) and that the statute and convention are mutually exclusive. "Our interpretation affords every

benefit negotiated for by the parties to the Convention on behalf of their respective residents and prevents an unintended tax windfall * * * " to the taxpayers in the present case. Maximov v. United States, 373 U.S. 49, 56, 83 S.Ct. 1054, 1058, 10 L.Ed.2d 184.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

13. Ordinarily § 902 provides a greater tax benefit than Article XIII(1), but under certain circumstances the Article XIII(1) credit may be more favorable. E. g., when the standard tax rate has increased between the time the British subsidiary earns the income and pays the standard tax and the time that it distributes a portion of its accumulated income as a dividend. This is true because § 902 credit is based on the tax rate applicable at the time the subsidiary pays the standard tax, but Article XIII(1) credit is based on the tax rate applicable at the time the dividend is paid.