CARBORUNDUM COMPANY, A DELAWARE CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7779–70.   Filed August 28, 1972.

*Walter A. Slowinski* and *Dennis I. Meyer*, for the petitioner.
*Stephen M. Miller*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's income tax for the taxable years 1961 and 1962 in the amounts of $65,272 and $354,020, respectively. The sole issue involved is the amount of the dividend that should be utilized as the numerator of the first fraction applicable in calculating the foreign tax credit to which petitioner is entitled under section 902(a).[1]

OPINION

All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner is a domestic corporation with its principal office in Niagara Falls, N.Y., at the time of filing the petition herein. It filed its Federal income tax returns for the taxable years 1961 and 1962 on

___
[1] All references are to the Internal Revenue Code of 1954, as in effect during the years involved, unless otherwise specified.

the accrual basis with the district director of internal revenue, Buffalo, N.Y.

Petitioner is engaged directly and through subsidiaries in the manufacture and sale of a diversified line of abrasive materials and machines, refractory materials, and other nonmetallic materials as well as pollution control equipment.

In 1961 and 1962, petitioner owned all of the outstanding stock of Carborundum Co., Ltd. (hereinafter referred to as CCL), and British Resistor Co., Ltd. (hereinafter referred to as BRC), corporations organized under the laws of, and resident in, the United Kingdom. During the years in issue, CCL and BRC (hereinafter collectively referred to as the U.K. subsidaries) had gains, profits, and income (hereinafter referred to as total profits) as follows:

|  | 1961 | 1962 |
|---|---|---|
| CCL | $3,047,644 | $3,013,682 |
| BRC | 16,653 | 23,893 |

In 1961 and 1962, the U.K. subsidaries were subject in the United Kingdom to an income tax at the standard rate (hereinafter referred to as the standard tax), which is imposed upon both individual and corporate taxpayers, and a profits tax, which is imposed only on corporate profits. Both the standard tax and the profits tax were imposed on the U.K. subsidiaries' total profits for the taxable year without deduction of any dividend declared from those earnings; neither tax was deductible in computing the other.

During the taxable years involved, a United Kingdom resident corporation could declare dividends either "with deduction of standard tax" or "free of standard tax." When a dividend was declared "with deduction of standard tax," the corporation computed the standard tax payable on that portion of the total profits equal to the declared amount of the dividend and paid the balance of the declared amount to the shareholder. When a dividend was declared "free of standard tax," the amount declared as a dividend was distributed to the shareholder.

The U.K. subsidiaries in 1961 and 1962 paid the following standard and profits taxes to the United Kingdom:

|  | 1961 | 1962 |
|---|---|---|
| CCL: | | |
| Standard tax | $931,117 | $943,415 |
| Profits tax | 382,593 | 387,780 |
| BRC: | | |
| Standard tax | 6,475 | 9,232 |
| Profits tax | 1,918 | 3,297 |

The standard and profits taxes paid by the U.K. subsidiaries to the United Kingdom in 1961 and 1962 constitute "income, war profits, or

excess profits taxes" within the meaning of that phrase as used in sections 901 through 905 and also constitute "United Kingdom tax" as defined by article I of the income tax convention between the United States and the United Kingdom (hereinafter sometimes referred to as the convention).

During 1961 and 1962, petitioner received dividends "free of standard tax" from its U.K. subsidiaries and elected to treat the standard tax appropriate to such dividends in accordance with article XIII(1) of the convention by including in its gross income the amount of the standard tax appropriate to the dividends and claiming a direct foreign tax credit therefor on its Federal income tax returns for those years pursuant to the provisions of section 901. The phrase "United Kingdom tax appropriate to such dividend" as used in article XIII(1) of the convention means the standard tax appropriate to the dividend.

The amount of the dividends distributed to the petitioner, the standard tax appropriate to such dividends, and the "grossed-up" dividends were as follows:

| CCL: | 1961 | 1962 |
|---|---|---|
| Dividend distributed to petitioner | $858, 263 | $860, 563 |
| Standard tax appropriate to the dividend | 542, 987 | 544, 437 |
| Grossed-up dividend | 1, 401, 250 | 1, 405, 000 |
| BRC: | | |
| Dividend distributed to petitioner | 6, 015 | 6, 047 |
| Standard tax appropriate to the dividend | 3, 806 | 3, 825 |
| Grossed-up dividend | 9, 821 | 9, 872 |

In addition to the direct credit for the amount of the standard tax appropriate to the dividend, petitioner, for 1961 and 1962, also claimed an indirect credit pursuant to the provisions of section 902(a) for the income, war profits, and excess profits taxes paid by the U.K. subsidiaries on or with respect to the accumulated profits out of which the dividends were paid.

The question before us involves the computation of the indirect foreign tax credit to which petitioner is entitled under section 902(a) with respect to the United Kingdom profits taxes paid by its U.K. subsidiaries. For the years involved herein, the formula for computing the indirect credit under section 902(a) is governed by *American Chicle Co.* v. *United States*, 316 U.S. 450 (1942), and is as follows:

The "accumulated profits" terms cancel out and the single fraction which may be used to determine what portion of a foreign tax is creditable is dividends over total profits.

The dispute herein requires a determination of what should be included in dividends in the first fraction of the foregoing formula. The issue is one of first impression.

Much of the background material which underpins our resolution of this issue is set forth at length in our recent opinion in *Gleason Works*, 58 T.C. 464 (1972). Nevertheless, in the interests of a self-contained opinion, which will fully reflect the considerations involved in this case, we will repeat portions of that opinion. As in *Gleason Works*, our starting point is *Biddle* v. *Commissioner*, 302 U.S. 573 (1938).

In *Biddle*, the British standard tax had been levied on a United Kingdom corporation's "profits or gains." The corporation then paid a dividend to United States taxpayers and withheld therefrom [2] the portion of the tax it had paid or was liable to pay "appropriate" to the dividend pursuant to rule 20 of the British Income Tax Act of 1918.[3] The United States taxpayers claimed the right to report, as income for United States income tax purposes, the gross amount of the dividend (i.e., the amount received plus the amount withheld) and to take credit (up to the statutory limit) against their United States income tax for the amount of tax withheld as "income * * * taxes paid or accrued" under section 131(a)(1) of the Revenue Act of 1928 (the predecessor of sec. 901(b)(1)). The Commissioner asserted that the British standard tax had been imposed on the British corporation, not the United States taxpayers, and that the latter were entitled to report for Federal income tax purposes merely the actual amount received without any credit for the amount withheld. The Supreme Court rejected the taxpayers' contention.[4] The structure of

---

[2] No significance was attached to the fact that two of the three subsidiaries involved therein declared dividends "free of standard tax" rather than "with deduction of standard tax." See 302 U.S. at 580 (1938). The parties are in agreement on this point as far as the instant case is concerned.

[3] "The profits or gains to be charged on any body of persons shall be computed in accordance with the provisions of this Act on the full amount of the same before any dividend thereof is made in respect of any share, right, or title thereto, and the body of persons paying such dividend shall be entitled to deduct the tax appropriate thereto." This rule was incorporated, in substantially the same terms, into sec. 184, I.T.A. 1952, and was repealed by Finance Act 1965, sch. 22, pt. IV.

[4] Actually the history of the allowance of a foreign tax credit in respect of the British standard tax appropriate to a dividend begins with S.M. 3040, IV–1 C.B. 198 (1925), in which it was ruled that such credit was allowable. This ruling was reaffirmed in S.M. 5363, V–1 C.B. 89 (1926). See also I.T. 2401, VII–1 C.B. 126 (1928); G.C.M. 3179, VII–1 C.B. 240 (1928). The Supreme Court, in *Biddle* v. *Commissioner*, 302 U.S. 573, 582 (1938), rejected the contention that these rulings had a binding effect. As a result of *Biddle*, the aforementioned rulings were revoked or modified so as to disallow a shareholder credit for the tax appropriate to dividends. See G.C.M. 19902, 1938–1 C.B. 354. Finally, S.M. 5363 was declared obsolete by Rev. Rul. 68–674, 1968–2 C.B. 609.

its opinion has a direct bearing upon our analysis of the issue presented herein.

First, the Supreme Court established the principle that the determination as to whether a foreign income tax had been "paid or accrued" within the meaning of the Federal taxing statute was to be made in accordance with the criteria established by our own revenue laws and court decisions and not by "a shifting standard * * * adopted by reference to foreign characterizations and classifications of tax legislation." Hence, the fact that British law "regarded" the tax appropriate to the dividend as having been paid by the stockholder-recipient was "not conclusive" but at most "a factor to be considered in deciding whether the stockholder pays the tax within the meaning of our own statute." *Biddle* v. *Commissioner, supra* at 578–579.

Next, the Supreme Court examined the operation of the British income tax law as far as the standard tax appropriate to dividends was concerned. It concluded that the tax was legally imposed on the corporation and that the stockholder merely suffered the economic burden of the tax by virtue of the provision of the British law permitting the corporation to withhold the amount of the tax appropriate to the dividend which would otherwise have been paid to the stockholder.

Finally, the Supreme Court pointed out that, although a stockholder in a United States corporation ultimately bears the economic burden of the income taxes paid by the corporation, our revenue laws give no recognition to that fact. Both the corporation and the stockholder are required to pay their respective taxes and our revenue laws "have never treated the stockholder for any purpose as paying the tax collected from the corporation." On this basis, the Court concluded that to allow the claimed credit would extend to stockholders of a British corporation "a privilege not granted to stockholders in our own corporations." *Biddle* v. *Commissioner, supra* at 581. See *Gleason Works, supra* at 468, fn. 5.

In 1946, the result in *Biddle* was changed by the United States–United Kingdom Income Tax Convention, effective, as respects United States tax, for taxable years beginning on or after January 1, 1945. Article XIII of that convention provided, in pertinent part, that:

### ARTICLE XIII

(1) Subject to section 131 of the United States Internal Revenue Code as in effect on the first day of January, 1945, United Kingdom tax shall be allowed as a credit against United States tax. For this purpose, the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom income tax appropriate to such dividend if such

recipient elects to include in his gross income for the purposes of United States tax the amount of such United Kingdom income tax. [60 Stat. 1384.]

Colin F. Stam, chief of staff of the Joint Committee on Internal Revenue Taxation, in explanation of article XIII(1) to a subcommittee of the Senate Foreign Relations Committee, stated:

[The convention] makes another important change over existing law which will further benefit American citizens. There was a case that went up to the Supreme Court, the *Biddle* case, in which it was held that the tax collected or paid by a British corporation is not a tax on the shareholder but a tax on the corporation itself, and that, therefore, an American shareholder who was a stockholder in a British corporation was not entitled to any credit for the tax paid by the British corporation to the British treasury.

This convention *overrules* that decision by providing that the American shareholder *may elect to treat such a tax as his tax* and thereby secure credit for the British corporate tax. All of the shareholders do not have to elect under convention, but any one shareholder can elect to include the amount of the British tax on his gross income. * * *

\* \* \* \* \* \* \*

* * * The British have a system in which tax is levied on the corporation and the tax is paid into the British treasury; then, when the British corporation later declares a dividend to its shareholders, the corporation recoups from that dividend the amount of the tax which it has paid into the treasury. In other words, if the British corporation was going to declare a dividend of $100,000, 50 percent of that $100,000 would be retained by the corporation because it had paid the 50 percent tax to the British treasury. The shareholder will actually receive only $50,000, but he must report the entire gross dividend of $100,000 in his return. And he will get a tax credit of $50,000. The British surtax does not start until $8,000. *The Shareholder incudes the whole $100,000 dividend*, gets credit for the normal tax *but not the surtax*.

* * * *The convention adopts the British concept and allows the shareholder to get the credit.*[5]

[Hearings on Conventions with Great Britain and Northern Ireland Respecting Income and Estate Taxes before a Subcommittee of the Senate Foreign Relations Committee, 79th Cong., 1st Sess., pp. 70–71 (1945), reprinted in 2 Legislative History of United States Tax Conventions 2636–2637 (1962). Emphasis added.]

Article XIII was amended by a supplementary protocol, effective, as regards United States tax, for taxable years beginning on or after January 1, 1956, reading, in pertinent part, as follows:

### ARTICLE XIII

(1) Subject to Sections 901 to 905 of the United States Internal Revenue Code as in effect on the 1st day of January 1956, United Kingdom tax shall be allowed as a credit against United States tax. For this purpose

---

[5] Similarly, the Technical Memorandum of the Treasury Department on the convention stated in reference to article XIII that it "in effect, revokes the principle of *Biddle* v. *Commissioner*." See 2 Legislative History of United States Tax Conventions 2661.

(a) the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom tax appropriate to such dividend * * *

\*      \*      \*      \*      \*      \*      \*

if the recipient of the dividend * * * elects to include in his gross income for the purposes of United States tax the amount of such United Kingdom income tax. [ [1958] 9 U.S.T. 1331.]

It is against the foregoing background that we turn to a consideration of the contentions of the parties.

Petitioner elected to employ article XIII(1). It claims that, having taken into income the amount of the dividend received plus the standard tax appropriate thereto, its election operates throughout sections 901 to 905 and this "gross dividend" is the amount which properly constitutes the numerator of the fraction to be utilized in computing the indirect credits at issue herein. Pointing to decisions of this Court that a dividend for purposes of section 902 should have the same meaning as it does for section 316 (*Central Aguirre Sugar Co.*, 24 T.C. 630, 637 (1955) ; cf. *National Carbon Co.*, 2 T.C. 57 (1943) ), petitioner, in essence, adopts in paraphrase the literary observation that a "[r]ose is a rose is a rose is a rose" (Stein, G., "Sacred Emily," Geography and Plays 187 (1922) ).

Respondent accords article XIII(1) a narrow reading. His position is that the numerator should consist of only the amounts which petitioner actually received. He argues that the effect of an election under article XIII(1) is limited to the computation of the direct foreign tax credit under section 901 and that the convention does not turn what was previously held to be a tax on the United Kingdom corporation into a withholding tax imposed on the shareholders.

In support of his contention, respondent seeks to draw a distinction based upon the fact that petitioner was not *required* to pay the standard tax "appropriate to [the] dividend" but merely *elected* so to do. This contention overlooks the critical fact that, in the absence of an election, petitioner would have only had to include the amount, net or "free" of the standard tax in its United States income. *Biddle* v. *Commissioner, supra.* Such treatment, in substance, is the same as including the "gross dividend," i.e., the amount received plus the standard tax, and then deducting the standard tax. Thus, for the purpose of this case, by virtue of article XIII(1) of the convention, petitioner is in the same position as any other taxpayer who is given an election between a deduction and a credit in respect of foreign income taxes paid by it or on its behalf. Secs. 164(a)(3), 275(a)(4), and 901.

If petitioner had actually received the amount of the "gross dividend" and then had paid the standard tax directly, it could hardly be argued that that amount would not be the numerator in the *American*

*Chicle* formula. And the same result would obtain if that tax had been imposed upon petitioner but withheld from the amount of the dividend otherwise payable and remitted by the British subsidiaries as collecting agents. Cf. *Wisconsin Gas Co.* v. *United States*, 322 U.S. 526 (1944) ; *Gleason Works, supra*. By its election, petitioner turned the standard tax into an amount withheld on its behalf. Cf. *National Cash Register Co.* v. *United States*, 400 F.2d 820 (C.A. 6, 1968). In attempting to equate the word "dividends," as used in section 902(a) and the numerator of the *American Chicle* formula with the amount actually received, respondent ignores the true nature, as far as this petitioner is concerned, of the standard tax which was paid in respect of that amount. In this connection, we are constrained to observe that respondent's position is diametrically opposed to the position taken by him in situations, too numerous to describe, with respect to taxing one person on payments made by another for his benefit.

Adoption of the position advanced by respondent would also appear to create an anomaly with respect to the meaning of the terms "dividends" and "accumulated profits" in the section 902(a) formula. Having included the British standard tax appropriate to the dividend in its gross income, in accordance with article XIII(1), petitioner is "deemed to have paid" the tax. If the petitioner is thus deemed to be the taxpayer, it would seem that the United Kingdom subsidiaries cannot be treated as the taxpayers for purposes of section 902(a).[6] *National Cash Register Co.* v. *United States, supra*. If the subsidiaries are not the taxpayers, the British standard tax should not be subtracted from the "total profits" of those corporations in computing their "accumulated profits" under section 902(c). If the tax is not subtracted in computing "accumulated profits," it should not be subtracted in computing "dividends" for purposes of calculating the section 902 credit, since a hypothetical distribution of all of said accumulated profits should produce an equivalent amount of dividends. See Owens, The Foreign Tax Credit 373 (1961). In making these observations, we are aware of the complex definitional problems which can arise under section 902, particularly in reference to the term "accumulated profits,"[7] and recognize that we need not delineate the pre-

---

[6] We say "for purposes of section 902(a)" because the article XIII(1) election only applies to secs. 901–905 and thus would not, at least on its face and according to the legislative history, change the result in *Welch* v. *St. Helena Petroleum Co.*, 78 F.2d 631 (C.A. 9, 1935), which allowed a British corporation to deduct said tax from its gross income in determining net income taxable in the United States from United States sources. See Statement by Colin F. Stam, 2 Legislative History of United States Tax Conventions 2636 (1962) ; Technical Memorandum of the Treasury Department, *id.* at 2661.

[7] See Schoenfeld, "Some Definitional Problems in the Deemed Paid Foreign Tax Credit of Section 902: 'Dividends' and 'Accumulated Profits,' 18 Tax. L. Rev. 421 (1963).

cise meaning of that term because the *American Chicle* formula has the effect of removing it from the computation involved herein.

Contrary to respondent's contention, the legislative history of the changes made in section 902 by the Revenue Act of 1962 (changes which are concededly inapplicable to the years before us) do not support his position herein. That history makes it clear that Congress was intentionally making a substantive change in the law relating to the indirect foreign tax credit. H. Rept. No. 1447, 87th Cong., 2d Sess., p. A79 (1962) ; S. Rept. No. 1881, 87th Cong., 2d Sess., p. 222 (1962). But, beyond this, the thrust of the amendments made by that Act indicates that they were predicated upon the basic proposition that the amount of the indirect foreign tax credit should be increased where the amount of the foreign taxes is taken into income by the domestic parent.[8]

Finally, neither *American Chicle Co.* v. *United States, supra,* nor *National Cash Register Co.* v. *United States, supra,* provides respondent with any sustenance. In *American Chicle,* the taxpayer was seeking a direct credit for an amount which the Supreme Court held was *not* properly includable in United States income. In *National Cash Register,* the amount of the standard tax for which an indirect credit was sought was also *not* includable in United States income under article XIII of the convention and the Sixth Circuit Court of Appeals held that article XIII did not permit a splitting of the use of the standard tax. The reasoning in both cases implies that the absence of includability was a highly significant consideration.[9]

The pivotal fact in this case is that the *gross amount* is taxed in the United States and, therefore, whether the foreign tax is remitted directly by the recipient or indirectly through collection at the source should not affect the section 902(a) computation. To treat the two situations differently in computing the foreign tax credit would have but one result, frustration of the purposes of section 902. Cf. *Central Aguirre Sugar Co., supra; National Carbon Co., supra.* Since the purpose of the section 902(a) calculation is to provide a credit for that portion of the foreign tax imposed on income taxed in the United States and the gross amount of the dividend is so taxed, the amount

---

[8] We note that sec. 1.78–1(c), Income Tax Regs., provides that if a domestic corporation elects to gross up and credit under article XIII(1), the United Kingdom tax appropriate to the dividend is not a sec. 78 dividend (sec. 78 was added to the Code by the Revenue Act of 1962) and therefore not automatically excluded from "dividends" as that term is used in sec. 902(a)(1), as amended in 1962.

[9] In *National Cash Register Co.* v. *United States,* 400 F. 2d 820 (C.A. 6, 1968), the Government conceded, for purposes of that case, the correctness of the method of computing "dividends" utilized by petitioner herein. See brief of the United States in the Court of Appeals, p. 22, fn. 26.

used in the numerator of the computational formula should be the gross dividend. See *United Dyewood Corporation* v. *Bowers*, 44 F. 2d 399, 402 (S.D.N.Y. 1930), affirmed without discussion of this point, 56 F. 2d 603 (C.A. 2, 1932) ; cf. *American Chicle Co.* v. *United States*, *supra* at 452. See also Owens, The Foreign Tax Credit 111–112 (1961). Although such treatment will produce a greater indirect credit for the profits tax than would be the case had petitioner not elected to employ article XIII (1), such a result is perfectly harmonious with the objectives of section 902(a) because a larger portion of the foreign income on which the profits tax was imposed has become taxable in the United States, and, therefore, a larger portion of said tax should be creditable.[10] See Owens, The Foreign Tax Credit 372–373 (1961).

To reflect certain concessions made by petitioner,

*Decision will be entered under Rule 50.*

---

[10] The indirect credit claimed herein relates only to the British profits tax, and thus we are not faced with the same issue which the Court of Appeals was confronted with in *National Cash Register Co.* v. *United States, supra*.

