SERGE BIAMBY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Biamby v. Commissioner
Docket No. 1481-89
United States Tax Court
T.C. Memo 1991-204; 1991 Tax Ct. Memo LEXIS 228; 61 T.C.M. (CCH) 2566; T.C.M. (RIA) 91204; May 13, 1991, Filed *228 Decision will be entered under Rule 155. Harrison T. Slaughter, Jr., for the petitioner. Mitchell I. Horowitz, and Scott E. Itkin, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's Federal income tax liability and additions to tax as follows: Additions to Tax, Secs. [1]
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1985
$   5,961.00
$    610.00
$      305.00  $      779.16  Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
1986
$  37,596.00
$   9,399.00
$    1,880.00  $    2,733.45  1987
261,843.00
65,461.00
13,092.00  *     Year
6654 6661  1985
--   $ 1,490.00
Year
6654   6661  1986
$  1,819.00
--   1987
14,145.00
--   *229 After concessions, the issues for decision are: (1) The amount of petitioner's unreported taxable income for 1985 and 1987; (2) petitioner's entitlement to a credit against his United States income tax liability for taxes paid to the Republic of Haiti; and (3) petitioner's liability for additions to tax. FINDINGS OF FACT Petitioner was a resident of Miami, Florida, at the time he filed his petition in this case. Petitioner is a native of the Republic of Haiti. He came to the United States on March 19, 1962, to attend college in New York City. Petitioner eventually registered as a permanent resident alien of the United States. In 1985, petitioner was paid $ 70,000 for supplying airbills to Guido F. Leon (Leon) to be used in the importation of cocaine into the United States from Haiti. During 1985, 1986, and 1987, petitioner resided in Miami, Florida, but petitioner spent considerable time in Haiti, where he maintained ownership interests in three companies: Sewing Best S.A. (Sewing Best), S.B. Construction Company (S.B. Construction), and the Silver Dollar Club. Sewing Best operated a garment manufacturing plant that employed several hundred people. Sewing Best was owned *230 jointly by petitioner and two of his brothers. During the years at issue, Sewing Best participated in a U.S. Government program under which cut garments were shipped from the United States to Haiti for assembly. The finished garments were then shipped back to the United States free of duty restrictions. S.B. Construction was in the business of transporting building materials to construction work sites. During 1985, 1986, and 1987, S.B. Construction owned three trucks, employed approximately nine people, and was wholly owned by petitioner. The Silver Dollar Club operated a mini-casino in Petionville, Haiti. During the years at issue, the Silver Dollar Club employed 15 people and operated 20 slot machines, 2 roulette tables, and 4 blackjack tables. It was apparently wholly owned by petitioner. It is not clear from the record whether Sewing Best, S.B. Construction, and the Silver Dollar Club were corporations, partnerships, or sole proprietorships. During 1985, 1986, and 1987, certain expenditures were made in Florida in petitioner's name that are the basis of the income adjustments made against petitioner. Respondent contends that the funds used for these expenditures represent *231 taxable income to petitioner in the relevant years. Petitioner does not dispute that many of the expenditures were made with funds that represent taxable income to him, but, with regard to four of the expenditures, petitioner contends that his name was used only as a nominee for Leon and that the funds associated with the four expenditures do not represent taxable income to him. Set forth below is a summary schedule of the various expenditures that are the basis of respondent's income adjustments against petitioner. The schedule also reflects the expenditures petitioner has agreed to and those still in dispute. [2]
*232 Agreed to by
Disputed by
Source
Petitioner
Petitioner
1985
Importation of Cocaine
$  70,000
1983 BMW 733i
$  21,375
1985 Total
$  70,000
$  21,375
1986
Capri Gardens Condo
$  12,057
Calusa I Condo
73,900
1986 Total
$  85,957 --
1987
Kollin Mortgage
$ 219,791
Sealord Tango Yacht
120,000
1988 Jaguar XJ40
13,400
Calusa Forest Condo
$  42,000
Calusa IV Condo
64,900
Calusa III Condo
71,900
Snapper Village Condo
6,000
AMC Jeep
4,821
Jaguar
46,040
Jewelry
6,465
Various Checks
87,647
1987 Total
$ 329,773
$ 353,191
With regard to the first disputed item (namely, the $ 21,375 relating to the 1985 purchase of a 1983 BMW 733i), the facts in the record are as follows. On December 10, 1985, a used 1983 BMW 733i was purchased from Formula 1 Sports Cars, Inc. (Formula 1) for a total purchase price of $ 21,375, all of which was paid in cash. The BMW was purchased and registered in Florida in petitioner's name. At the time of the purchase, both petitioner and Leon were present and negotiated with the salesman from Formula 1. The salesman was unclear as to whether petitioner or Leon was *233 to be the actual purchaser. Leon, not petitioner, drove and used the 1983 BMW. On or about March 10, 1986, a 1986 Mercedes Benz 300E was purchased in petitioner's name from Formula 1 for $ 36,405. The 1983 BMW 733i was traded in for a credit of $ 18,000 on the purchase of the Mercedes Benz, leaving a balance due of $ 18,405. To finance the balance, a retail installment contract was executed in petitioner's name on March 16, 1986, and was assigned by Formula 1 to the Miami National Bank. With regard to the second disputed item (namely, the Kollin mortgage), the facts in the record are as follows. On June 8, 1987, Leon's parents purchased a house and real property located at 1865 Cleveland Road, Miami Beach, Florida (the Cleveland Road property). The purchase of the Cleveland Road property was handled by Leon and in his name, acting on behalf of his parents, who resided in Peru. The Cleveland Road property was purchased from Michael and Shirley Kollin (the Kollins) for $ 245,000, reflected by a $ 70,000 cash downpayment and a purchase money mortgage given to the Kollins in the amount of $ 175,000. The $ 70,000 cash downpayment on the Cleveland Road property was made with funds *234 Leon had given to his attorney, Stephen Finta (Finta), for that purpose. A check in the amount of $ 175,000 was also paid to the Kollins by Finta on Leon's behalf and with funds Leon provided to Finta. This payment paid off the Kollin mortgage. Apparently, in order to avoid showing Leon as the purchaser, upon paying off the Kollin mortgage, the mortgage was not extinguished but instead was nominally assigned to petitioner. The mortgage and the assignment of the mortgage to petitioner were recorded on June 12, 1987. When the Cleveland Road property was sold by the Leons in November of 1988, petitioner was requested by Finta's office to execute a satisfaction of the nominally outstanding mortgage, which petitioner did, and for which petitioner received no compensation. With regard to the third disputed item (namely, the Sealord Tango yacht), the facts in the record are as follows. The Sealord Tango yacht was purchased in July of 1987 in petitioner's name for $ 120,000. On July 9, 1987, a deposit receipt for the yacht was executed in petitioner's name and a bill of sale from the Lorn Trading Company was executed showing petitioner as the purchaser. The application for the initial *235 certificate of title was made on July 10, 1987, in petitioner's name and showing petitioner's birth date as October 2, 1935. Petitioner's Haitian passport indicates that petitioner's birth date is October 23, 1940. On August 6, 1987, a certificate of title was issued in petitioner's name for the Sealord Tango yacht. With regard to the fourth disputed item (namely, the 1988 Jaguar XJ40), the facts in the record are as follows. On August 8, 1987, the Jaguar was purchased in petitioner's name from Formula 1 for $ 45,146. The 1986 Mercedes Benz 300E purchased in 1986 was traded in on the 1988 Jaguar for a credit of $ 31,000, leaving a balance due of $ 13,400 (not including sales tax and other fees). On August 25, 1987, a modification agreement was executed in petitioner's name with the Miami National Bank under which the bank released its lien against the 1986 Mercedes Benz 300E and replaced it with a lien against the 1988 Jaguar XJ40. The 1988 Jaguar XJ40 was subsequently repossessed by the Miami National Bank on May 8, 1989. On May 12, 1989, Finta sent a letter to the Miami National Bank stating that petitioner had previously assigned his interest in the 1988 Jaguar XJ40 to *236 Leon and stating Finta's intention to pay off the balance owed and reclaim the vehicle. Finta also requested that title to the Jaguar be placed in Leon's name. Subsequently, the balance due on the loan was paid by a check from Marla Santos, Leon's fiancee. On June 26, 1989, title to the Jaguar was released to Finta. At all relevant times, Leon, not petitioner, drove and used the 1988 Jaguar. The facts relating to the credits claimed for taxes paid to the Republic of Haiti are as follows. At trial, petitioner submitted three one-page documents in French from the Republic of Haiti, General Tax Administration, and English translations thereof (the Haitian documents), indicating that petitioner had paid "annual income tax" to the Haitian government on his business activities, described as "a garment factory," "a transport company (heavy vehicles)," and "a mini-casino." The total amounts indicated were $ 23,000 for 1985, $ 19,000 for 1986, and $ 18,000 for 1987. [3]
*237 After contact with respondent, petitioner filed his Federal income tax return for 1985 late on May 27, 1986. On Schedule C attached to the 1985 return, petitioner reported gross receipts in the total amount of $ 4,820 and deductions in the total amount of $ 3,620, resulting in $ 1,200 of taxable income. Petitioner calculated self-employment tax owing of $ 142 and deducted an earned income credit of $ 129, for a total tax reported of $ 13. Petitioner did not claim any tax credits on his 1985 Federal income tax return as filed, with regard to taxes allegedly paid to Haiti. Petitioner did not file Federal income tax returns for 1986 or 1987. In August of 1988, petitioner was arrested along with six other individuals. At the time of their arrest, petitioner and the other six individuals were in possession of 495 kilograms of cocaine and $ 52,545 in United States currency. Petitioner was indicted on five counts relating to the smuggling of cocaine. Petitioner pled guilty to one count. The other counts apparently were dismissed. Respondent used the source and application of funds method of proof in determining that petitioner had unreported taxable income of $ 20,175, $ 85,957, *238 and $ 682,964 in 1985, 1986, and 1987, respectively. At trial, the Court granted respondent's motion to amend the determination of unreported income for 1985 to include the $ 70,000 that petitioner admitted he earned from his cocaine smuggling operation with Leon. As indicated, petitioner now concedes that he had unreported taxable income of $ 70,000, $ 85,957, and $ 329,773 in 1985, 1986, and 1987, respectively. OPINION Unreported Income
The source and application of funds method (also known as the cash expenditures method) of reconstructing a taxpayer's income is based on the assumption that expenditures made by a taxpayer during a taxable period in excess of known sources of income represent taxable income. The determination of a deficiency by use of this method is presumptively correct and the burden is on the taxpayer to prove otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a); DeVenney v. Commissioner, 85 T.C. 927, 930-931 (1985); Burgo v. Commissioner, 69 T.C. 729, 743 (1978). Use of the source and application of funds method of reconstructing income is appropriate where a taxpayer fails *239 to keep books and records or where the books and records do not clearly reflect income. United States v. Johnson, 319 U.S. 503, 87 L. Ed. 1546, 63 S. Ct. 1233 (1943); Viles v. Commissioner, 233 F.2d 376, 378 (6th Cir. 1956), affg. a Memorandum Opinion of this Court; Vassallo v. Commissioner, 23 T.C. 656, 661-662 (1955). In this case, petitioner did not produce any books or records at trial. As for the specific items in dispute, we find that petitioner was not the purchaser of the 1983 BMW 733i or the 1988 Jaguar XJ40. Petitioner did not drive or use either vehicle. Although petitioner signed documents reflecting that he was the owner of these vehicles, we find credible petitioner's testimony that he did so only as a favor to and on behalf of Leon. The sequence of events whereby the 1983 BMW was traded in for the 1986 Mercedes Benz that was then traded in for the 1988 Jaguar suggests that the same person owned all three cars, and we conclude that that person was Leon. The fact that Leon's attorney and fiancee eventually paid off the loan on the 1988 Jaguar further indicates that petitioner was not the beneficial owner of the Jaguar. Petitioner has *240 met his burden of proving that the funds used to purchase the 1983 BMW 733i and the 1988 Jaguar XJ40 were not taxable income to petitioner. With regard to the Kollin mortgage, there is no evidence that petitioner supplied any funds to the Kollins for the nominal assignment to him of the mortgage. Leon's funds were used to pay the full purchase price for the Cleveland Road property. Petitioner's name is associated with this mortgage only as a nominal assignee of the fully paid mortgage. We conclude that the funds used to pay the Kollins for the $ 175,000 mortgage do not represent taxable income to petitioner. With regard to the Sealord Tango yacht, the scant evidence points to petitioner as the owner. We hold that petitioner purchased the Sealord Tango yacht and that the expenditure of $ 120,000 with respect thereto represented taxable income to petitioner. Based on our holdings, in addition to amounts already conceded, petitioner received $ 120,000 of unreported taxable income in 1987. Foreign Tax Credits
Section 901(b) allows a credit against U.S. taxes owed to alien residents of the United States in the amount of "any income, war profits, and excess profits taxes *241 paid or accrued during the taxable year to any foreign country" subject to certain limits not applicable here. A foreign tax qualifies as an "income tax" for purposes of section 901 only if it is a tax the predominant character of which is an income tax as that term is understood in the United States. Sec. 1.901-2(a)(1), Income Tax Regs. The question of whether a tax imposed by a foreign country is an income tax under section 901(b) is to be resolved under the revenue laws and court decisions of the United States. Biddle v. Commissioner, 302 U.S. 573, 578-579, 82 L. Ed. 431, 58 S. Ct. 379 (1938); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1260 (1970). Petitioner testified that the amounts paid to the Government of Haiti included taxes on personal income from his businesses and taxes paid on wages of employees of all three of his businesses. Petitioner estimated that approximately one-third of the total Haitian taxes he paid each year represented Haitian income taxes on his personal earnings. Petitioner estimates that his personal income from his Haitian businesses was $ 20,000, $ 60,000, and $ 60,000 in 1985, 1986, and 1987, respectively. Petitioner has offered *242 no evidence regarding the tax laws of Haiti or the interpretation under U.S. law of the term "income tax" as used in the Haitian documents submitted. The evidence is incomplete and vague regarding the amount of taxes paid, by whom the taxes were paid, on whose behalf the taxes were paid, and regarding the nature of petitioner's ownership interests in the entities that operated his businesses. On the record before us, petitioner has not met his burden of proving his entitlement to a tax credit for any of the taxes paid to the Republic of Haiti. Additions to Tax
Section 6651(a)(1) provides for an addition to tax for failure to timely file Federal income tax returns unless there is reasonable cause for such failure. For every month of delinquency in filing, the addition is five percent of the amount required to be shown as tax on the return, up to a maximum of 25 percent. Petitioner acknowledges that his return for 1985 was filed on May 27, 1986, and that no returns were filed for 1986 or 1987. Additions to tax under section 6653(a)(1) for 1985 and under section 6653(a)(1)(A) for 1986 and 1987 apply where any portion of a deficiency is due to negligence or to intentional *243 disregard of rules or regulations. Additional interest under section 6653(a)(2) for 1985 and under section 6653(a)(1)(B) for 1986 and 1987 apply with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to use due care or to do what a reasonable and ordinarily prudent person would have done under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination is presumptively correct and the burden is on petitioner to prove that he was not negligent. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Section 6654 imposes an addition to tax for failure to pay estimated income taxes. Petitioner asserted generally that he was under the impression that he was not required to file U.S. Federal income tax returns for the years in issue. This general assertion is clearly not sufficient to avoid the imposition of the addition. Gallagher v. Commissioner, 75 T.C. 313, 318 (1980). Petitioner has *244 not sustained his burden of establishing that respondent's determination of the additions to tax is incorrect. We hold that petitioner did not show reasonable cause in filing late for 1985 and in not filing returns for 1986 and 1987, was negligent in omitting substantial taxable income, and failed to pay estimated taxes. Petitioner is liable for the additions to tax determined by respondent for each year with regard to the entire underpayment. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.↩
2. The amounts indicated for several expenditures differ somewhat from the amounts indicated in the stipulation of facts, but the amounts indicated are in accord with the amounts shown in respondent's post-trial brief. In every instance where the amounts indicated are less than the amounts stipulated, we have interpreted the amounts set forth in respondent's brief as concessions by respondent of the differences in the amounts.↩
3. Amounts indicated are given in U.S. dollars, converted from Haitian gourds at the stipulated exchange rate of five gourds per U.S. dollar. The Haitian tax year runs from October to October. The years with respect to which the Haitian taxes apparently were paid are petitioner's taxable years for Haitian tax purposes ending October 31 of 1985, 1986, and 1987.↩